### STATE v. ALBERT A. AMES.[1]

January 29, 1904.

Nos. 13,715—(22).

**Act Constitutional.**

Chapter 151, p. 154, Laws 1899, regulating the manner of drawing jurors in counties having a population of two hundred thousand, is a general law, and is constitutional, and not class legislation.

**Challenging Juror.**

Under section 7362, G. S. 1894, the court, for good cause, may permit a challenge to be taken after a juror is sworn, and before the jury is completed. The state, having come into possession of new evidence bearing upon the juror's suitability, moved for permission to re-examine a juror upon the question of actual bias. *Held*, the cause shown was sufficient, and there was no error in the ruling.

**Indictment.**

An indictment charged that on December 15, 1901, the defendant (mayor of the city) did feloniously receive from (naming certain parties, and others unknown, who were conducting houses of ill repute) the sum of $600, upon the agreement and with the understanding that such persons would be protected from criminal prosecution for the month of December, 1901. *Held*, the indictment stated one offense; it being inferred that the money was a fund contributed by the persons named pursuant to a joint or common understanding that such contributors should be protected.

**Failure of Proof.**

The undisputed evidence is that detectives and police officers accepted money from the women specified in the indictment, and others, in amounts

[1] Reported in 98 N. W. 190.

ranging from $15 to $25, in consideration of which each person making payment was promised police protection; that the detectives and police officers who received the money were the agents of defendant, and not of those making payments; that there was no joint agreement or understanding between those paying the money; that the $600 which was paid over to defendant by his agent in one sum, after it was paid to him by the women individually, was not a general fund, contributed with the understanding that those participating should be protected. *Held,* there was a failure of proof to sustain the offense charged.

Defendant was tried and convicted in the district court for Hennepin county before Elliott, J., and a jury on an indictment charging him with having received a bribe while exercising the office of mayor of the city of Minneapolis. From the judgment of conviction, whereby he was sentenced to confinement for a term of six years in the state prison, defendant appealed. Reversed.

*Nye & Deutsch* and *Erwin & Mead,* for appellant.

The court erred in overruling the defendant's motion to compel the state to elect upon which of the crimes charged in the indictment the state would rely to secure the conviction of defendant. State v. Wood, 13 Minn. 112 (121). The state cannot avoid the force of the rule which requires that a single felony only shall be charged in one count, by charging a single felony only and under that charge attempting to prove two. Womack v. State, 7 Cold. 508; McElroy v. U. S., 164 U. S. 76, 80; Lunn v. State, 44 Tex. 85; Williams v. State, 77 Ala. 53; Stockwell v. State, 27 Oh. St. 563; State v. Hurd, 101 Iowa, 391.

The great and overwhelming weight of authority is to the effect that under circumstances such as exist in the present case, each collection and its corresponding agreement was a separate, distinct, substantive offense, and that if each one had been set out in full in the indictment, the indictment would have been bad for duplicity, and that, it having appeared upon the trial that the state expected to offer evidence on and prove each one of the separate collections and agreements, it should have been compelled to elect upon which particular collection and agreement it would seek to charge the defendant. Wallace v. State, 41 Fla. 547, and cases cited; State v. Moore, 86 Minn. 422.

*W. B. Douglas,* Attorney General, *F. H. Boardman,* County Attorney, and *C. S. Jelley,* Assistant County Attorney, for the state.

Evidence is admissible which tends to show motive, criminal intent, guilty knowledge and a scheme or plan embracing two or more crimes, so related to each other that proof of one tends to prove the other. States v. Ames, 90 Minn. 183; U. S. v. Watson (D. C.) 35 Fed. 358; People v. Gray, 66 Cal. 271; Coleman v. People, 58 N. Y. 555; Com. v. White, 145 Mass. 392; Hall v. State, 71 Tenn. 552; Rafferty v. State, 91 Tenn. 656; Guthrie.v. State, 16 Neb. 667.

When averments in an indictment or information as to quantity, quality, kind, value, number, etc., are not descriptive of the identity of the subject matter they are immaterial, and need not be proved strictly as alleged, but it is sufficient if the allegation is substantially proven. 3 Greenleaf, Ev. § 12; Bruguier v. U. S., 1 Dak. 5; Alexander v. State, 99 Ind. 450; Klein v. State, 76 Ind. 333; Todd v. State, 31 Ind. 514; State v. Tisdale, 54 Minn. 105; State v. Andrews, 28 Mo. 17. If it is a fact that the defendant received $600 as a bribe, he was guilty, and he was equally guilty if, as a bribe, he received any less sum than that, his guilt being determined not by the amount he received, but by the fact that he received any amount. The precise sum of money was not essential, nor was the precise sum the essence of the offense. Ferris v. Comstock, 33 Conn. 513; Sage v. Hawley, 16 Conn. 106; Bunting v. Allen, 18 N. J. L. 299; Jansen v. Ostrander, 1 Cow. 670; 22 Enc. Pl. & Pr. 596; McCorkle v. State, 14 Ind. 39; Parsons v. State, 2 Ind. 499; U. S. v. Fish, 24 Fed. 585.

The indictment charges but one offense and is not bad for duplicity. U. S. v. Scott, 74 Fed. 213; State v. Newton, 42 Vt. 537; Regina v. Bleasdale, 2 Car. & K. 765; Regina v. Giddins, Car. & M. 634; State v. Nelson, 29 Me. 329; Ben v. State, 22 Ala. 9; Rex v. Benfield, 2 Burrow, 980; Guthrie v. State, supra; Mooney v. State, 8 Ala. 328; State v. Morphin, 37 Mo. 373; Lorton v. State, 7 Mo. 55; Roberts v. State, 14 Ga. 8; State v. Hennessey, 23 Oh. St. 339; Com. v. Sullivan, 104 Mass. 552; Boyce v. Odell Com. Co., 107 Fed. 58.

But one offense is charged in the indictment, and but one was proved by the evidence. The conviction of the defendant is a complete bar to a prosecution for the receiving of a bribe from either of the women named in the indictment or from either of those who gave money to

Gardner for police protection for December, 1901. Lorton v. State, supra; Jackson v. State, 14 Ind. 327; Roberts v. State, supra; Com. v. Sullivan, supra; Com. v. Andrews, 2 Mass. 409; State v. Thurston, 2 McMul. 382; Hoiles v. U. S., 3 MacArthur, 370; 1 Chitty, Cr. L. 462–463; G. S. 1894, § 7311.

LEWIS, J.

Defendant was charged with, and convicted of, the crime of receiving a bribe. The charging part of the indictment is set out in full for the purpose of clearness:

> "And said Albert A. Ames on the 15th day of December, 1901, at the city of Minneapolis, in the county of Hennepin, in the state of Minnesota, then and there being, and then and there executing and performing the duties and functions of the office of mayor of said city of Minneapolis, did willfully, unlawfully, wrongfully, knowingly, feloniously, corruptly, and contrary to his duty as such mayor of said city of Minneapolis, receive, have, and obtain from Gladys Barr, Augusta Hayden, Millie Rosell, Bessie Ferris, Sadie Bird, Ethel Ford, and others, whose names are to the grand jury unknown, a certain sum of money, to wit, the sum of six hundred dollars, genuine, lawful, and current money of the United States of America, of the value of six hundred dollars, from the said Gladys Barr, Augusta Hayden, Millie Rosell, Bessie Ferris, Sadie Bird, Ethel Ford, and others, whose true names are to the grand jury unknown, upon the agreement and understanding that his, the said Albert A. Ames' official action and duty as mayor of said city of Minneapolis should be influenced thereby, and upon the agreement and understanding that he, the said Albert A. Ames, as mayor of said city of Minneapolis, would omit to take certain action, and would neglect and violate his official duty as such mayor in the following manner, to wit: That on the said 15th day of December, 1901, and for several months prior thereto, at and within the limits of the city of Minneapolis, in said county of Hennepin, in the state of Minnesota, the said Gladys Barr, Augusta Hayden, Millie Rosell, Bessie Ferris, Sadie Bird and Ethel Ford, whose true names are to the grand jury unknown, then

and there being, each for herself, did willfully, unlawfully, and wrongfully keep a house of ill fame, to wit: Gladys Barr, that certain house known and designated as number 404 Second Avenue South, in said city of Minneapolis; Augusta Hayden, that certain house known and designated as number 241 Third Avenue North, in said city of Minneapolis; Millie Rosell, that certain house known and designated as 242 Hennepin avenue, in said city of Minneapolis; Bessie Ferris, that certain house known and designated as number 6 First Avenue South, in said city of Minneapolis; Sadie Bird, that certain house known and designated as number 404 Second Avenue South, in said city of Minneapolis; Ethel Ford, that certain house known and designated as number 126 Second Street South, in said city of Minneapolis; and divers other persons whose names are to the grand jury unknown, but which persons were then and there residing in said city of Minneapolis, and each and all of them were then and there engaged in the business of unlawfully keeping, each for herself, a house of ill fame in said city of Minneapolis, the exact location of such houses and the keeper thereof being to the grand jury unknown, and which houses, and all of those heretofore designated and described, were then and there resorted to for the purposes of prostitution, assignation, and fornication, contrary to the statutes of the state of Minnesota, all of which he, the said Albert A. Ames, on the fifteenth day of December, 1901, well knew; that the said Albert A. Ames, as such mayor of the city of Minneapolis as aforesaid, on the said fifteenth day of December, 1901, at said city of Minneapolis, then and there being, and then and there well knowing that the said Gladys Barr, Augusta Hayden, Millie Rosell, Bessie Ferris, Sadie Bird, Ethel Ford, and divers other persons, whose names are to the grand jury unknown, were engaged, each and all, in the business of keeping houses of ill fame, as aforesaid, and then and there well knowing the said Gladys Barr, Augusta Hayden, Millie Rosell, Bessie Ferris, Sadie Bird, Ethel Ford, and divers other persons whose names are to the grand jury unknown, were common prostitutes, did willfully, unlawfully, wrongfully, knowingly, feloniously, corruptly, and contrary to his duty as such mayor

91 M.—24

of the city of Minneapolis, take and receive as a bribe a certain sum of money, to wit, the sum of six hundred dollars, genuine, lawful, and current money of the United States of America, of the value of six hundred dollars, from the said Gladys Barr, Augusta Hayden, Millie Rosell, Bessie Ferris, Sadie Bird, Ethel Ford, and divers other persons whose names are to the grand jury unknown, the exact amount of money received from each of said persons being to the grand jury unknown, upon the agreement and understanding with the said Gladys Barr, Augusta Hayden, Millie Rosell, Bessie Ferris, Sadie Bird, Ethel Ford, and divers other persons, whose names are to the grand jury unknown, that he, the said Albert A. Ames, as mayor of said city of Minneapolis, as aforesaid, would not arrest or cause the arrest of either of them for keeping a house of ill fame, as hereinbefore alleged, and upon the agreement and understanding that he, the said Albert A. Ames, as mayor of said city of Minneapolis, would then and there and at all times refrain from arresting and causing the arrest and prosecution of her, the said Gladys Barr, Augusta Hayden, Millie Rosell, Bessie Ferris, Sadie Bird, Ethel Ford, and divers other persons, whose names are to the grand jury unknown, or either of them, for the crime of keeping a house of ill fame as aforesaid, and upon the agreement and understanding that he, the said Albert A. Ames, as mayor of the said city of Minneapolis, would use his influence with the police department of said city, then and there, and at all times, to protect her, the said Gladys Barr, Augusta Hayden, Millie Rosell, Bessie Ferris, Sadie Bird, Ethel Ford, and divers other persons, whose names are to the grand jury unknown, from arrests and prosecution upon the charge of keeping a house of ill fame at the place and places and in the manner hereinbefore alleged.

"And the grand jury aforesaid, upon their oaths aforesaid, do further say that under and pursuant to said agreement and understanding entered into by the said Albert A. Ames, as mayor of said city, with the said Gladys Barr, Augusta Hayden, Millie Rosell, Bessie Ferris, Sadie Bird, Ethel Ford, and others whose names are to the grand jury unknown, that the

said Gladys Barr, Augusta Hayden, Millie Rosell, Bessie Ferris, Sadie Bird, Ethel Ford, and others whose names are to the grand jury unknown, did, at said city of Minneapolis, on the said fifteenth day of December, 1901, pay to the said Albert A. Ames, and the said Albert A. Ames, as mayor of said city, did then and there receive from the said Gladys Barr, Augusta Hayden, Millie Rosell, Bessie Ferris, Sadie Bird, Ethel Ford, and others, whose names are to the grand jury unknown, the sum of six hundred dollars, as and for a bribe, in the manner and form aforesaid, contrary to the statute in such cases made and provided, and against the peace and dignity of the state of Minnesota."

1. A motion to quash the indictment was entered by defendant upon the ground that chapter 151, p. 154, Laws 1899, under which the grand jury returning the indictment was drawn, was unconstitutional, as being class legislation. The act in question is entitled "An act regulating the manner of drawing jurors in counties having a population of over two hundred thousand," and provides that in such counties the judges of the district court, or a majority thereof, shall annually, on some day in the month of December, select from the qualified electors of the county two hundred persons properly qualified to serve as grand jurors, and two thousand properly qualified to serve as petit jurors, from which list the grand and petit jurors shall respectively be drawn at the time required for the transaction of business in the district court of the county. The grand jury in question was drawn from the list made up in accordance with this act.

The act is not subject to any of the objections urged against it. It is a general law, having application to all counties in the state which at the time of its enactment or at any future time might acquire a population of two hundred thousand. While the special acts which governed the selection of grand jurors in Hennepin county prior to its enactment were not specifically repealed, they are clearly so by implication, and the general law is the only act in force with reference to the selection of grand jurors in that county. The act does not come within the objections defined in Murray v. Board of Co. Commrs. of Ramsey Co., 81 Minn. 359, 84 N. W. 103, for the classification is not

arbitrary, and is not based upon existing circumstances only, but has reference to a condition which, in the opinion of the legislators, exists in largely populated counties. The object to be attained was a method of selecting the best possible class of citizens to act in the capacity of jurors, and there is a reasonable foundation for the distinction made by the legislature in giving the selection of names from which the jurors should be taken to the judges of the court in counties of large population, as distinguished from the power vested in county commissioners in counties of less population. It may be reasonably asserted that, the larger the county, the greater the opportunity for unwholesome influence in the selection of the jury list. The classification is not within the rule as defined in State v. Ritt, 76 Minn. 531, 79 N. W. 535. The motion to quash was properly overruled.

2. During the selection of the jury at the trial, the third juror accepted was John E. Layne, who was not challenged by the defendant, and the state withdrew the challenge interposed for both implied and actual bias. Before the completion of the jury the state produced an affidavit in which it was averred that Layne had made a statement to the effect that, if he were on the jury, he would not vote for a conviction of defendant, and the state moved the court for leave to examine the juror upon the question of actual bias. Leave was granted, the challenge found true by the triers, and the juror was excused. Under G. S. 1894, § 7362, the court may, for good cause, permit a challenge to be taken after the juror is sworn, and before the jury is completed. The cause shown was sufficient, the state had come into possession of new evidence bearing upon the juror's suitability, the defendant was not prejudiced, and there was no error in the ruling.

3. Defendant demurred to the indictment upon the ground, among others, that more than one offense was charged therein, and that the indictment was not found in a case where it is allowed by the statute to charge two offenses. The demurrer having been overruled, the trial proceeded, and, upon the introduction of testimony by the state, defendant moved for an order of the court to compel the state to elect upon which of the offenses charged in the indictment it would rely, which motion was denied. The rulings of the court are assigned as error, and are directed to the sufficiency of the indictment, upon the ground that it charges more than one offense.

Section 6, article 1, of the Constitution, provides that in criminal prosecutions the accused shall be informed of the nature and cause of the accusation, and by section 7 the information is to be furnished by the presentment or indictment of the grand jury. Section 7241, G. S. 1894, requires that the indictment shall be direct and certain as regards the offense charged, and the particular circumstances of the offense, when necessary to constitute a complete offense. Section 7247 sets forth certain tests as to the sufficiency of an indictment, among which are: Sixth, that the act or omission charged as the offense is clearly and distinctly set forth, in ordinary and concise language, without repetition; and, seventh, that the act or omission charged as the offense is stated with such a degree of certainty as to enable the court to pronounce judgment, upon the conviction, according to the right of the case. In the case of State v. Nelson, 74 Minn. 409, 77 N. W. 223, it was stated that the fundamental principle of the constitutional provision is that the accusation, whether by indictment or information, must be sufficient and specific fairly to apprise the accused of the nature of the charge against him, that he may know what to answer, and be prepared to meet the exact charge against him, and that the record may show, as far as may be, for what he is put in jeopardy.

If the allegations of the indictment mean that the persons paying the money acted jointly in making an agreement with defendant, and in pursuance of such agreement the money was collected for the month of December and paid to defendant, then but one offense is set forth. On the other hand, if the natural inference to be drawn from the entire language of the bill is that the parties paying the money were not acting together, had no joint agreement or understanding as between themselves, and each one paid the amount for individual protection of herself, without regard to whether or not the others paid, and without reference to the amount of the total payment, then each specific payment of money by each particular person would constitute a separate and distinct transaction and offense. Giving defendant the benefit of the constitutional and statute requirements, and construing the language of the indictment liberally in his favor, we are of the opinion that the crime charged is one offense, viz., the receiving of a bribe of $600, which amount was contributed by the various parties mentioned, and others unknown.

The substance of the charge is, as specified in the first part of the bill, that on December 15, 1901, defendant did feloniously receive from the parties named, and others unknown, the sum of $600, upon the agreement and understanding that such parties would be protected from criminal prosecution for the month of December, 1901. It is not directly charged that the parties to be protected entered into a joint agreement between themselves, or that the money was a contribution to a fund, but such is the inference from the language used. All that is stated throughout the body of the bill as to the locality of each of the persons, the occupation carried on, and the statement that each was to be protected in such place, is not inconsistent with the general allegation already mentioned; nor is the statement that the exact amount of money received from each of the persons was to the grand jury unknown necessarily in conflict. with the view that the money had been paid by each in pursuance of a joint agreement. These particulars are inserted to show the nature of the occupation of each person contributing to the fund, and emphasize the fact that each contributor was to be protected. The indictment is not rendered uncertain and indefinite from the fact that it states that part of the money was paid by persons to the grand jury unknown. It was certain and definite with reference to six persons specifically named, and if the crime charged is that the parties specifically named, and others whose names are unknown, entered into an agreement for their protection, and in pursuance thereof the money was paid, there is but one offense charged. The motion to quash and the motion to elect were properly overruled.

4. We now come to a more serious question, viz., does the evidence sustain the offense charged in the indictment?

The principal witness on behalf of the state was Erwin A. Gardner, who was, at the time the offense is alleged to have been committed, a student in defendant's medical office, and his testimony was to the effect that defendant came to him and proposed to gather what he termed "a campaign fund"; that he was directed to go to the various places of resort in the city, and make a monthly collection from each person according to her circumstances, in consideration of which payments the parties paying should be protected from arrest; that, in pursuance of this conversation, defendant detailed for Gardner's assist-

ance several detectives and police officers of the city, with whose help he was to locate the various parties. Christopher Norbeck, a city detective, gave substantial assistance in locating the women and in collecting the money. Defendant directed Norbeck and the other men to take their instructions from Gardner. Gardner received money from each woman independently—about one half of the amount from the first to the fifth, and the other half from the fifteenth to the twentieth, of the month. Several of the women were called by the state, and each testified to having paid Gardner a sum of money ranging from $15 to $25, with the understanding that she would be protected. After receiving the entire amount—about $600—Gardner paid the same over in one sum to defendant.

The state has advanced two propositions in support of its claim that the offense charged in the indictment is supported by the evidence: First, that Gardner was acting as agent of the women, and represented them in receiving their contributions to the fund being collected for their benefit, and paying the amount thereof over to the defendant; second, that when Gardner handed defendant, at his office, the roll of bills of $600, as testified to by him and the mayor's private secretary, Thomas Brown, a single and distinct offense was committed, in receiving a bribe of $600, and that this act was the culmination of several acts of other people, but on defendant's part there was unity of action and unity of intent.

The undisputed evidence on the part of the state is that Gardner was delegated by defendant as his agent, with power to arrange with as many of the women as it was possible to get money from, and to agree, on the part of defendant, that, in consideration of the payment by each of the amount decided upon, such person would be unmolested for the month of December. If this evidence be true, the defendant constituted Gardner, the several detectives and police officers, his agents to represent him, so that the effect was the same as though he had individually gone to each of the parties and himself received the money. There is no evidence to the effect that any of the women acted jointly or in pursuance of a common understanding, or that a fund was made up by them, or on their behalf. There is no evidence to justify the inference that Gardner was constituted the agent of the women; that he was to take their money, having been contributed to a

fund for that purpose, and then, for them, deliver it to defendant, with the understanding that, in consideration thereof, the parties to the contribution should receive protection. Each person making a payment acted absolutely independently of every other. There was a separate and distinct agreement entered into with each person paying any money to the effect that such person would be protected by reason of the payment, regardless of whether any others similarly situated paid any money or were protected.

This is a complete answer to the second proposition, that acceptance by defendant of the roll of bills constituted the offense charged, and that it implied unity of action and unity of intent. If this were true, then guilt would depend upon the amount paid on each occasion by the agent to his principal; and, upon this theory, if Gardner had paid over $50 every time he received that amount, then twelve separate offenses would have been committed. The amount paid over to his chief by Gardner at any one time was only an incident in the carrying out of the scheme of accepting bribes from the different individuals mentioned, and such payment into the hands of defendant was immaterial, under the evidence, except as it corroborated Gardner, to show that he was acting for his principal, and had carried out his instructions.

In State v. Ames, 90 Minn. 183, 96 N. W. 330, the chief of police was indicted and convicted for taking a bribe in February, 1902, from one of the women who paid money to Gardner in December. The state in that case treated each payment for protection as one offense, although perpetrated in pursuance of a general scheme to receive bribes from all women similarly situated. It does not follow that, because each transaction constituted a separate offense, the same evidence would justify a conviction for one offense, based upon the entire scheme, unless under an indictment for conspiracy. Defendant is not charged with conspiracy, and hence the mere devising of the scheme to collect money from different persons engaged in the same unlawful business does not constitute the act or transaction set forth in the indictment.

The distinction between the intent, purpose, or impulse constituting conspiracy, and the individual acts by means of which it is carried into effect, is pointed out in Wallace v. State, 41 Fla. 547, 26 South. 713. The evidence in the case before us no more establishes the commission of one offense than does the counterfeiting of several notes of

the same series, printed upon the same plate, constitute one offense, although perpetrated in pursuance of a general scheme to raise money by counterfeiting. Bliss v. U. S., 105 Fed. 508, 44 C. C. A. 324. In contrast with the last case, see State v. Moore, 86 Minn. 422, 90 N. W. 787, where this court held that the uttering of a forged mortgage and forged note, which the mortgage purported to secure, at one time and to the same party, is a single act, and constitutes one offense. That case applies the general rule that where there is but one impulse, although carried into effect by different acts, the whole constitutes but one transaction and one offense. To the same effect, the receiving of money on deposit by an officer of an insolvent bank from one particular person is not a continuous offense, and a bar to a prosecution for receiving money thereafter from another individual at a different time. They are different transactions, and constitute distinct offenses, although carried into effect pursuant to a purpose of defrauding all depositors who placed money in the insolvent institution. State v. Burlingame, 146 Mo. 207, 48 S. W. 75. See also State v. Jamison, 110 Iowa, 337, 81 N. W. 595.

The state relies mainly upon the case of U. S. v. Scott (C. C.) 74 Fed. 213, where the indictment charged an internal revenue collector with being unlawfully concerned in soliciting a contribution of money (naming the amount, set forth in different counts) from divers persons who were officers of the United States government, to the grand jury unknown, contrary to the statute which prohibited any officer of the government from soliciting or receiving, or being in any manner concerned in the soliciting or receiving of, any assessment, subscription, or contribution for any political purpose from any officer, clerk, or employee of the government. Upon demurrer the indictment was sustained, and it was held that it charged only one offense. An examination of the authorities cited in the opinion discloses the fact that the court based its decision upon the principle that the offense charged involved but one transaction, although such act involved several similar violations of the law with respect to several different persons. In other words, that defendant was concerned in an assessment or fund which was contributed to by parties unknown. In the words of the court: "It is easy to imagine circumstances under which the defendant, by one act of reception, or by one act of solicitation, could have

received or solicited contributions from many persons. In such a case the foregoing authorities seem to establish the propriety of embracing in one count the single act of solicitation or reception in all the aspects which it presents with reference to the different persons whose contributions were solicited or received." Clearly, the indictment in that case stated but one offense. So here the indictment charges but one offense—the receiving of a bribe, which is one act or transaction—but there is a complete failure of proof of the particular act or transaction set forth constituting the offense charged. This disposes of the case, and it is unnecessary to notice the other assignments of error.

Judgment reversed.

BROWN and LOVELY, JJ. (concurring.)

We concur in the result reached in this case, but not for the reasons given in the opinion of the court.

It is the constitutional right of every person accused of crime to be furnished reasonably certain information of the charge upon which he is to be tried, to enable him to prepare for his defense or to avail himself of the plea of former jeopardy, and we are very clear that this indictment did not accord to the accused this guaranty of the organic law. The rule of criminal pleading that the charge must be laid positively, and not inferentially, by way of recital, merely, or argumentatively, is well settled in this state. State v. Howard, 66 Minn. 309, 68 N. W. 1096; State v. Clements, 82 Minn. 448, 85 N. W. 234. This constitutional right of the accused is not abrogated, but has been recognized by statute (State v. Cody, 65 Minn. 121, 67 N. W. 798), and is of little avail if the exigencies of any particular case stand in the way of its essential enforcement by the courts.

It seems to us quite apparent that this indictment charges that defendant solicited a number of bribes or "grafts" from several distinct women, some of them named, and others unknown and not named, for whom protection and immunity were to be given. It is not set forth in the indictment that these women were acting in concert, and the fundamental principle of law is that in criminal pleading nothing can be inferred, intended, or presumed that is necessary to be alleged as an essential element of a crime. If the abandoned women were seeking protection through Gardner, as their agent, and the bribes were to be

paid by them jointly, the situation presented would be very different from that of soliciting and receiving money of different persons at different times, each being an independent act, as here alleged. We are unable, by any fair or reasonable construction of this pleading, to reach the conclusion that such necessary co-operation or concert of action by these women is charged therein. To infer its existence would be, in effect, to create a new accusation for a different offense. If such an inference were permitted, it would be an infringement of what we regard as the plainest rules of criminal pleading.

If, as held by the court, the indictment charges but one offense, it is impossible to avoid the inevitable and logical result which follows from the proofs offered at the trial that Gardner was the agent of the women, and paid the money to Ames as their representative. At least, the evidence was sufficient to sustain the jury in so finding. We cannot avoid the view that the indictment charges what is plainly stated—the commission of many distinct and separate offenses, committed at different times, between the defendant and those persons from whom the bribes were received, as well as a number of unknown persons of the same character, whose names might be first made known at the trial, and thus subject the defendant to an inquisition which no necessity in criminal procedure can justify, since it strikes at fundamental safeguards, which it is our duty to recognize and uphold. The indictment should either have been set aside for uncertainty, or, upon the defendant's motion at the beginning of the trial, the state should have been required to elect upon which charge the prosecution would proceed.

To our minds, the vital question is not the sufficiency of evidence, but whether one of the plainest principles of the fundamental law, upon which the rights of all citizens depend, has been violated.