## STATE v. SAM TARAN.[1]

January 4, 1929.

Nos. 27,113, 27,184.

[1]Reported in 222 N. W. 906.

176

See 17 R. C. L. 52; 4 R. C. L. Supp. 1108.

*William M. Nash, Chester L. Nichols* and *Conrad Olson,* for appellant.

*G. A. Youngquist,* Attorney General, *Floyd B. Olson,* County Attorney, and *Arthur Markve* and *Elizabeth Owens,* Assistant County Attorneys, for the state.

STONE, J.

Convicted of grand larceny in the first degree, defendant Sam Taran appeals from the order denying his motion for a new trial and also from the judgment.

Taran was indicted jointly with one Mark G. Wynn, but had a separate trial. The principal witness against him was Wynn. The indictment charges the two with grand larceny perpetrated by false pretenses. Briefly, the testimony for the state is to the effect that in February, 1927, Taran, by force, actual violence and threats of more, with the assistance of several "gunmen," made Wynn his prisoner for ten days, and that during that time he compelled Wynn to forge automobile conditional sales contracts and the instalment notes accompanying them, and to sell the papers so forged to innocent purchasers, Taran getting the proceeds. The particular offense charged in the indictment was the sale to Otas Finance Company at Minneapolis of such a conditional sales contract, purporting to have been executed by one Leo Cunningham.

■ The indictment was demurred to, and there was objection to the introduction of evidence on the ground that it did not state an offense. The rulings were against defendant, and thereon is predicated the first point made for him. The indictment charges that Wynn and Taran "did wilfully, unlawfully, * * * and feloniously intending, devising and designing to cheat, deprive and defraud the Otas Finance Company * * * of its property, falsely and fraudulently state, represent and pretend * * * that the Wynn Motors" [a firm or corporation managed by Wynn] "had sold to one Leo Cunningham a certain automobile," describing it by motor and car number; "that the said Leo Cunningham did pay the full purchase price," $1,250, of which $466 had been paid in cash; and that the balance of $784, for which amount Cunningham had given his promissory instalment note, was secured by a chattel mortgage. The indictment further charged that the said note was represented to be of the value of $784, and that the Otas Finance Company, believing all of these false statements made by Wynn and Taran, paid for the Cunningham note and mortgage $700 by check; that all of the representations so charged as false were known to be false by both Wynn and Taran; that in truth the automobile described in the chattel mortgage had not been sold to Cunningham; "and that said note described as aforesaid, was valueless, all of which the said Mark G. Wynn and Sam Taran, and each of them, * * * well knew." There follows an allegation that they procured the $700 check of the Otas Finance Company by means of their false representations and pretenses. There is no direct charge in the indictment that the Cunningham note and mortgage were forged.

While the indictment would have been better for the presence of an allegation showing, without resort to conclusions, that the securities sold to the Otas Finance Company were spurious, the indictment is nevertheless sufficient to charge larceny by false pretenses. That is because there is the explicit accusation of knowingly false statements made as a means to procure money from another, and the accompanying averment that the car, supposed to

have been sold and by the note and chattel mortgage indicated to have been sold to Cunningham, in fact had never been sold; and the still further charge that the note was valueless. The latter allegation, standing alone, might not be sufficient, but, when it is buttressed by the others just referred to, we think the whole sufficient to charge a public offense under the statute making it larceny to obtain money by false pretenses. All the elements of the crime (enumerated in State v. Anderson, 159 Minn. 245, 199 N. W. 6) are made to appear.

That statute is G. S. 1923, § 10358(1). The crime is committed whenever any person "with intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person— 1. Shall take from the possession of the true owner, or of any other person, or obtain from such possession by color or aid of fraudulent or false representation or pretense, or of any false token or writing * * * any money, personal property, thing in action, evidence of debt, or contract, or article of value of any kind." So the crime may be committed by false and fraudulent representation and pretense, or by false token or writing, or by the use of both such means. Where both false representation and a false writing are resorted to, the gist of the offense is not the forging or uttering of the false writing, but the obtaining of money or other thing of value by means thereof. So it is not a fatal objection to the present indictment that, having pleaded adequately the substance of the false representations resorted to, it failed to aver that they were aided by forgery. The spurious papers were but the false evidence of a pretended sale of an automobile and the supposed obligation remaining for the unpaid purchase price. The indictment charges that no such sale ever took place. For these reasons the case does not come within the rule of such cases as State v. Clements, 82 Minn. 448, 85 N. W. 234, and of State v. Ames, 91 Minn. 365, 98 N. W. 190, upon which appellant relies. Of course it is the constitutional right of every person accused of crime to be furnished by indictment or information with "reasonably certain information of the charge upon which he is to

be tried, to enable him to prepare for his defense or to avail himself of the plea of former jeopardy" [91 Minn. 378].

The charge "must be laid positively, and not inferentially, by way of recital, merely, or argumentatively." State v. Ames, 91 Minn. 365, 378, 98 N. W. 190. The indictment now under consideration does not violate that rule. The testimony in support of it indicates that the defendant was guilty both of larceny by false pretenses and forgery. But in order to try him for the former it was not necessary to charge forgery also. It was enough to set forth the statutory elements of the larceny wherewith defendant was charged, and that, we think, was done. The evidence showed plainly enough the use of the false pretenses charged. It is not therefore one where the indictment charged commission of a crime by specified means and the evidence showed its commission in an entirely different manner. On that ground it is distinguishable from State v. Vorey, 41 Minn. 134, 43 N. W. 324.

■ Wynn was either the willing accomplice of Taran or his unwilling tool. The state submitted its case upon that theory. If either branch of the proposition was not supported by the evidence, a new trial would be required. The proof of Taran's compulsion of Wynn made it an issue for the jury whether it was such as to have created "a reasonable apprehension" in the mind of Wynn "that in case of refusal" he would have been "liable to instant death." G. S. 1923, § 9912. The jury was told that in the absence of compulsion actually creating such an apprehension, Wynn was an accomplice so that Taran could not be convicted upon Wynn's testimony unless corroborated by other evidence tending to convict, and showing something more than the commission of the offense or the circumstances thereof, as required by G. S. 1923, § 9903. There was convincing evidence, independent of the testimony of Wynn, that Taran got immediately all the money from the sale of the Cunningham paper and other similar securities forged by Wynn while under compulsion by Taran. The identification of the forged paper in the main was by Wynn himself, but there was additional and independent proof of his handwriting corroborating him at this point.

Wynn was a competent witness to identify the documents in question. The statute does not make an accomplice incompetent but does require corroborative evidence. That the paper was forged is testified to by Wynn. That it was worthless is testified to by the purchasers. That any of it was genuine or of value is not even suggested. That Taran got the proceeds (said to be $6,740) and particularly that he got the money from the Cunningham paper, seems proved to the point of demonstration by evidence other than that of Wynn. That is enough to satisfy the statute requiring corroboration, if Wynn be considered an accomplice. Furthermore, when Taran did get the money he handled it in a way which, on his own testimony, is alone enough to breed suspicion. That circumstance does not go to make up the required corroboration, but it does add force to that corroboration when we find it, as we do, elsewhere in the record. Of course if Wynn was not an accomplice there is no question of the sufficiency of the evidence. It follows therefore that whichever branch of the theory of the prosecution was accepted by the jury the verdict is well supported by the evidence.

■ There was testimony from one Cooke that he had bought a car from Wynn; that "around the 12th or 13th" of February, when Wynn says he was in the custody and control of Taran and his "gunmen," Wynn called at his house; that he had "some fellow with him;" that while Wynn "and this man" were in his house, he, Cooke, went to the basement "to the furnace;" that Wynn followed him down and there told him "that this fellow was his body guard * * * that he was a Chicago gunman * * * imported * * * by Taran to keep him [Wynn] from running away, to guard him, and he told me that he had already signed up a contract, but was forced to do it." It is argued that this evidence was hearsay and its admission error. It is attempted to be justified for the state as being part of the res gestae. It is said to be within the rule that "whenever any act, transaction, or occurrence may be proved, statements accompanying or forming a part thereof are admissible, if they tend to explain or characterize it." . 2 Dunnell, Minn. Dig. (2 ed.) § 3300. If the admission of the testimony is so justified,

it would probably be more accurate to classify the statement of Wynn, testified to by Cooke, as a spontaneous declaration and so within an exception to the hearsay rule. 3 Wigmore, Ev. (2 ed.) § 1745, et seq.

There is another ground upon which the admissibility of the evidence is beyond question. Cooke went on the witness stand after Wynn himself had testified at length and had been through a long cross-examination during which he had been much discredited. His character was besmirched and his whole story subjected to attack. Moreover, it was made clear that it was due for direct contradiction by evidence for the defense. It was therefore permissible, as part of the state's case in chief, to support Wynn's testimony and to rehabilitate him, not only in point of general character, but also and precisely as to his story concerning his supposed imprisonment by Taran. Wynn's conduct had been gone into in cross-examination and some shown to be inconsistent with his testimony. So it was clearly relevant for the state to attempt the rehabilitation of the witness and the support of his testimony by showing "statements at or about the time [of the questioned transaction] which explain the conduct and refute the imputation that the present explanation is an afterthought." 2 Wigmore, Ev. (2 ed.) § 1126; Sullivan v. Minneapolis St. Ry. Co. 161 Minn. 45, 200 N. W. 922.

Dean Wigmore illustrates the proper use of this sort of corroborative and rehabilitating testimony by Hewitt v. Corey, 150 Mass. 445, 23 N. E. 223. The action was for the conversion of a horse and the question whether the animal was owned by the plaintiff or her husband. The latter testified that he was not the owner. To discredit him and on cross-examination it was brought out that he had once included the horse in a chattel mortgage given by him. He explained that he did not know at the time that the horse was included and that as soon as he discovered it he told the mortgagees that the horse did not belong to him and ought not to have been covered by the mortgage. The plaintiff then called one of the mortgagees, who testified that shortly after the mortgage was signed, the husband had told him that the horse was not his and should not

have been in the mortgage. The testimony was held proper, the court saying [150 Mass. 446] that "the rule excluding such testimony does not apply to a case where the other party has sought to impeach the witness on cross-examination. * * * Such confirmatory evidence is competent where a witness is sought to be impeached by evidence tending to show that, at the time of giving his evidence, he is under a strong bias, or in such a situation as to put him under a sort of moral duress to testify in a particular way; or where an attempt is made to impeach the credit of a witness by showing that he formerly withheld or concealed the facts to which he has now testified." Such a situation is essentially different from that where such evidence is offered merely to buttress the statement of a witness by proof that elsewhere, and out of court, he has made a similar statement. In such a case the testimony is not admissible. Brown v. People, 17 Mich. 429, 97 Am. D. 195.

■ Another assignment of error goes to a portion of the charge reading as follows:

"There must be some other testimony [in addition to that of Wynn] which tends to convict the defendant, Sam Taran, of the commission of this offense before you would be entitled to find a verdict of guilty. *There is some such evidence* in this case sufficient so that the court is leaving it up to the jury to determine the weight and sufficiency thereof."

We italicize the portion of the instruction objected to, the argument being that it was an invasion of the province of the jury. The point has no merit. Had there been no testimony corroborating Wynn it would have been the judge's duty so to inform the jury. It was equally permissible for him to say that there was such testimony, so long as he left to the jury, as he did, the determination of its weight and sufficiency. Presley Fruit Co. v. St. Louis, I. M. & S. Ry. Co. 130 Minn. 121, 153 N. W. 115.

We deem it futile to follow the assignments of error any further. All the challenged portions of the record have been examined and found without suggestion of prejudicial error. There was much evidence of other offenses, but their relation to that charged against

Taran was so close that there is no suggestion of error on that account. The very nature of the case was such as to broaden to a somewhat unusual degree the proper field of judicial inquiry; and there was a wide discretion in the trial judge to admit evidence throwing light on the relations between Wynn and Taran and to permit comment by counsel on such evidence and its inferences. That some of such comment may have come at improper times, the jury being appropriately instructed in that connection, does not constitute prejudicial error.

Judgment affirmed.

[1]Reported in 222 N. W. 918.