DAVIS v. OREGON SHORT LINE R. CO.

No. 1701. Decided December 6, 1906 (88 Pac. 4).

1. APPEAL—HARMLESS ERROR—ADMISSION OF EVIDENCE. Allowing a witness, in an action against a railroad company for negligence in running its car off the end of a stub track into a street, and allowing it to remain there, frightening plaintiff's horse, and throwing him into a gully at the side of the road beyond the end of the car, which projected into the road, to testify that three or four days after the accident he saw the tracks of the car across the road, if error, because of absence of evidence that there had been no change in the conditions of the place from the time of the accident, is harmless; he having testified that immediately after the accident the wheels of the car were within three or four feet of the gully, and, in his testimony as to the tracks a few days later, he having placed the car two feet further from the gully, and the undisputed evidence showing that the distance between the end of the car and the gully was but a few feet, and it being immaterial whether the car was four or six feet or further from the gully, and plaintiff not having attempted to drive between the end of the car and the gully, so that the question of the sufficiency of the room for passage of his team was not in issue.

2. HIGHWAYS—INJURY FROM OBSTRUCTION—PLEADING AND PROOF. Plaintiff, under the allegation of his complaint that the road where he was injured from an obstruction was a public highway, may show its dedication by defendant.

3. DEDICATION—HIGHWAYS—EVIDENCE. For the purpose of showing dedication by defendant of a road which it constructed, taking the place of part of an old highway obstructed by it, and which was thrown open to the public, and to which the travel was diverted from the old road, evidence of the permanent character of the ob-

structions in the form of improvements of defendant's railroad, which it had placed on and across the old highway, is admissible.

4. APPEAL—HARMLESS ERROR—ADMISSION OF EVIDENCE. Witness having detailed the facts on which he based his conclusion that it would be difficult for a vehicle to pass over a road, which conclusion was the only reasonable one that could be drawn from the facts testified to, it was harmless to allow him to state his conclusion, especially when it was immaterial.

5. EVIDENCE—OPINIONS OF NONEXPERTS. One's wife, who had lived with him many years, and was in attendance on him during his illness, and was in a position to inform herself of his general physical condition as it was before and after he was injured, may testify to his good or poor health and as to his suffering pains or being free from them.

6. HIGHWAYS—INJURY FROM OBSTRUCTION—NEGLIGENCE. It is a question for the jury whether there was negligence on the part of a railroad company in running a car off the end of a stub track into a highway, and leaving it there on a dark night, without any light on it, by reason of which plaintiff's horse was frightened, and he was injured.

7. SAME—CONTRIBUTORY NEGLIGENCE. Whether one whose team was frightened by defendant's car pushed into the highway off the end of a stub track was guilty of contributory negligence is a question for the jury; there being no evidence that cars had theretofore been so pushed into the highway, and there being evidence that it was a very dark night, that the car was low and flat, and without any light on it, and that it could not be seen till one was right up to it.[1]

APPEAL from District Court, Third District; T. D. Lewis, Judge.

Action by William H. Davis against the Oregon Short Line Railroad Company. Judgment for plaintiff.

Defendant appeals.

AFFIRMED.

*P. L. Williams* for appellant.

*King, Burton & King* and *A. S. Fowler* for respondent.

---

[1] Silcock v. R. G., etc., R. Co., 22 Utah 185, 61 Pac. 565.

Plaintiff brought this action to recover damages for personal injuries alleged to have been sustained by him on the night of February 13, 1904, at the town of Kemmerer, in the state of Wyoming, while he was driving in a bobsleigh drawn by two horses along a highway which passed through said Kemmerer and on to the towns of Diamondville and North Kemmerer.

The complaint alleges that about midnight of said day, as plaintiff was lawfully traveling along the highway in question, and at a point near the corner of defendant's roundhouse in said town of Kemmerer, his team suddenly turned out of said highway to the left and fell into a depression or cut, dragging plaintiff into said cut and throwing him with great force and violence from the sleigh, and thereby injuring him; all of which, it is charged, resulted from the alleged negligence of defendant in pushing some empty cars off the end of a stub track near the corner of the roundhouse, and causing them to extend across said wagon road, thereby blocking the traveled portion thereof. The answer denies the acts of negligence charged in the complaint, and alleges contributory negligence on the part of plaintiff.

The record shows that Kemmerer, Diamondville and North Kemmerer are towns situated near each other and connected by a highway. Formerly the highway passed a short distance south of defendant's station in the town of Kemmerer, and continued northeasterly, across defendant's railroad track to North Kemmerer. Defendant built a roundhouse near its station and constructed switch and other railroad tracks on its yard, so that, at the time of the accident, there were thirteen of these tracks which crossed the line or course of the old highway. In 1900 the defendant closed a part of the highway in question, where the same passed over its premises in the vicinity of the roundhouse, and constructed a viaduct over its railroad tracks at a point about four hundred feet south of its station. Defendant also

constructed a road over the viaduct and connected it with the old highway a short distance beyond the roundhouse. After the building of the viaduct, the travel along the old highway and over the railroad tracks ceased, and the new road over the viaduct was used by the public. It was the only highway connecting Kemmerer with Diamondville and North Kemmerer. The new road, or that portion of the highway which crossed the viaduct and extended on northerly past the roundhouse and connected with the old highway, was entirely on the land of the defendant; but there is evidence in the record tending to show that the town of Kemmerer had work done on it, and thereby apparently treated it as a public road. The general direction of the railroad tracks at the station and roundhouse was north and south. Some of these tracks terminated at the roundhouse, but none of them approached nearer the wagon road than ten feet. East of the roundhouse there was an excavation or gully eighty feet in length and twenty feet in width. Witnesses for the plaintiff testified that this gully was from five to eight feet in depth. Defendant's witnesses testified that it was not more than three feet in depth at the deepest place. The wagon road passed between this gully and the roundhouse.

At 6 o'clock in the evening, on the day of the accident, plaintiff drove along the highway and saw that one end of a freight car had been pushed off the end of the track which terminated near the wagon road. He afterwards passed along the road several times that same evening and observed the car in the same position. Between 11 and 12 o'clock that same night, plaintiff, who was conducting a livery business, had occasion to take a couple of ladies from the town of Kemmerer to North Kemmerer. The trip was made in a bobsleigh, and the plaintiff testified that at this time the car had not been pushed onto the highway, and that the road was free from obstructions. His passengers, the two ladies referred to, were called as witnesses by defendant and testified that, when they came opposite the northeast corner of the roundhouse, the team suddenly stopped, and that plain-

tiff turned them out of the road and drove around some cars
which had been pushed off the track and across the wagon
road.    On his return trip, when near the roundhouse, and
within a few feet of the cars which had been pushed off the
track and across the wagon road, plaintiff's horses became
frightened, jumped to the left, and fell into the gully, and
plaintiff was thrown out of the sleigh and dragged beneath
it, in which position he remained until released a short time
thereafter by a Mr. Jenkins, who was traveling along the
same highway.    Plaintiff had two front teeth knocked out
in the accident, his knee was bruised and badly injured, his
back was bruised and hurt, and there is evidence in the record
which tends to show that some of the injuries are permanent
in character.    Dr. J. T. Gamble testified, in part. as follows:
"I saw him professionally on the morning of February 14,
1904.    I found him in bed on that occasion.    I made an
examination of him at that time and found his right side
more or less bruised and contused.    His right leg was bruised
and contused, and his right wrist was scratched a little and
somewhat bruised.    His face and lip were a little swollen.
The knee was considerably swollen, and there were indica-
tions that there had been a good deal of violence to the knee.
It was considerably swollen.    .    .    .    Part of his right side
between his fifth and sixth ribs was considerably contused
and swollen.    I consequently concluded that there had been
an incomplete fracture of one, or possibly two, of the ribs.
I gave him some opiate, as he seemed to be suffering consider-
ably, and bandaged up his body for the purpose of treating
the condition of the ribs.    .    .    .    The swelling in the knee
and leg went down within seven or eight days.    The indi-
cations were that there had been possibly a rupture of the
lateral ligaments of the bone."

A trial was had which resulted in a verdict in favor of
plaintiff for the sum of $2,500.    To reverse the judgment
entered on the verdict, defendant appeals.

McCARTY, C. J. (after stating the facts).
Morgan Jenkins, who assisted plaintiff from under the bob-
sleigh at the time of the accident, was called as a witness

by plaintiff, and testified that on the night in question "the wheels of the car were three or four feet from the bank." He further testified that, "subsequently, in daylight, about three or four days after this accident, 'I came along there." He was then asked: "Could you see marks of the car wheels across the road then ?" To this question defendant interpos-- ed an objection, on the ground that it was irrelevant, immaterial, and too remote. The objection was overruled, and the witness answered: "Yes, sir; these tracks were in the same place that I had seen the cars on the night of the accident." The admission of this testimony is now alleged as error. It is contended by appellant that no evidence was introduced which tended to show that the conditions at the place where plaintiff was hurt remained the same from the time of the accident until the day the witness made the observations inquired about, and therefore the testimony was irrelevant and prejudicial. Conceding, without deciding, that, as an abstract proposition of law, it was error to permit Jenkins to give testimony as to the conditions at the place of the accident three or four days after it occurred, yet it is apparent that appellant could not have been prejudiced by this testimony. Evidently it was introduced for the purpose of showing the close proximity of the end of the car to the gully, and that there was not sufficient space between the car and the gully for a team and sleigh to pass. In the testimony complained of Jenkins placed the car two feet farther away from the gully than he did in his testimony about which no complaint is made. In other words, the testimony was favorable, rather than prejudicial, to appellant. Then there is another reason why this testimony could not have been prejudicial to defendant. The undisputed evidence shows that the distance between the end of the car and the gully was at most but a few feet. Mrs. Stella Thomas, a witness for defendant, testified that she, in company with another lady, drove over the road in question in a cutter at about 2 o'clock a. m. on the night of the accident; that "there were some cars across the wagon road at the northeast corner of the roundhouse as we went home. In order to pass there we

had to drive around the cars. I do not know how far around we had to go, but we had to drive into a little gully, or something of that kind, in order to get around the cars." Thomas Larson, another of defendant's witnesses, testified, in part, as follows: "I went down there the morning after the accident. East of the roundhouse there is a little gully, or whatever you call it. . . . It is right opposite the end of the roundhouse, and was at the end of where these cars had been." And, further, the record shows that, when plaintiff's team became frightened, it "bolted off the road into the gully." Plaintiff was not attempting to drive between the end of the cars and the gully. Hence, the question as to whether there was sufficient room between these two points for the passage of plaintiff's team and bobsleigh was not an issue in the cause. Therefore, as we view the case, it is wholly immaterial whether the space between the cars and the gully was four or six feet, or even a greater distance, because this question can have no possible bearing on the issues in the case.

Appellant next complains of the admission of evidence respecting that part of the highway which was closed by defendant about the year 1900, and over which it has since constructed numerous railroad tracks. This portion of the old highway was traveled by the public prior to the construction by defendant of the viaduct and the opening by it of the new road mentioned in the foregoing statement of facts. Plaintiff alleges in his complaint that at the time he received the injuries complained of he was traveling along a public road. By its general denial defendant put in issue the alleged public character of the road. And on the trial defendant introduced evidence showing that it owned the fee to the land over which the new road was constructed. J. T. Gamble was called as a witness by plaintiff, and, after testifying to the changes made by defendant in the course of the highway at the time it built the viaduct, and to the location of the old and new road with respect to the roundhouse and the numerous railroad tracks in that immediate vicinity, was

permitted, over defendant's objection, to answer the following question:

"Q. State whether or not the defendant company constructed any tracks after you went across that road [referring to the old highway]. A. Well, there has been a number of switches put in there, and quite a bit of trackage. Q. State whether or not the construction of those tracks made it difficult and dangerous. A. Why, yes; it would be very difficult for a vehicle to pass over these tracks, almost impossible." Defendant having denied that the new road was a highway, it was proper for the plaintiff to show that, when defendant closed the old road, which the record shows had been open to and used by the public for twelve years, the new road was thrown open to the public, and that the travel was diverted from the old road to the new. In fact any evidence tending to show that the new road was a highway was admissable. Therefore we think it was proper for the plaintiff to show the permanent character of the obstructions in the form of improvements which defendant had placed on and across the old road, as tending to show, when considered in connection with other evidence in the case, a dedication by defendant of the new road as a highway. (13 Cyc. 496.) The fact that it might have been difficult or impossible for a vehicle to pass over and along the closed portion of the road, we think, was wholly unimportant; but we do not think the admission of the evidence was prejudicial error. The witness having detailed the facts upon which he based his conclusion that it would be difficult for a vehicle to pass over the old road—the only reasonable conclusion that can be drawn from the facts upon which it is predicated—we fail to see wherein it was prejudicial to defendant, especially in view of the fact that the question involved was, as above stated, unimportant and wholly immaterial.

"If a statement of inference, conclusion, or judgment is accompanied by an enumeration of facts upon which it is based, the error, if any, is usually harmless, as the jury can estimate the probative value of the statement. Thus, where a witness states merely by way of summary

or introduction or deduction from facts which he gives in detail, the error does not furnish cause for reversing a judgment." (17 Cyc. 60, and numerous cases cited in note.)

Mrs. Davis, plaintiff's wife, testified that prior to the accident plaintiff's health was good. Then, over the objection of defendant's counsel, she was permitted to answer the question "whether he was affected with pains in his back and side," prior to the accident. The answer was: "No, sir." The witness further testified as follows: "When my husband came in after the accident he was crippled, and he went immediately to bed.. . . . Mr. Davis stayed in bed four or five days. Then he would get out, but came back again, and he was in bed most of the time for about six months. After the accident Mr. Davis' side and back were black and blue and had scratches and bruises on them. His knee and wrist were also bruised. Dr. Gamble left some liniment there, and we rubbed him with that, and his body was bandaged around his back." Then, over the objections of defendant, the witness was permitted to answer the following questions: (a) "Whether plaintiff's condition is different from one time to another;" and (b) "state what the facts have been and were at the time [immediately after the jury] with reference to his being lame." The witness further testified that she was compelled to get up nights and rub plaintiff; that he used crutches off and on for six months after he received the injury; that prior to the accident he was able to work; "that he did all the stable work before the accident, but has not been able to do so since he was hurt." It is contended that the questions objected to called for the opinion of the witness, and that the court erred in permitting her to answer them. The witness was plaintiff's wife, and had lived with him for many years, was in attendance upon him during his illness, and was in a position to observe and to inform herself of his general physical condition as it was, both before and subsequent to the time he was injured. The rule is well settled that a nonexpert witness, having been in constant attendance on a person, and having had the opportunities for observing the movements and general physical condition of such

person, as the record shows were afforded Mrs. Davis in this case, is competent to testify whether the person is in good or poor health, and whether such person is afflicted with pains, or is free from pain. In *Railway Co.* v. *Fishman*, 169 Ill. 196, 48 N. E. 447, it is said:

"Opinions may be given by nonexpert witnesses as to state of health, hearing, or eyesight of another, or the ability of another to work, or walk, or to use his arms or legs naturally, or whether such one is suffering from pains or is unconscious or in possession of his or her mental faculties."

The following authorities declare this same doctrine: 17 Cyc. 87; 3 Wigmore on Evidence, section 1974; 2 Jones on Evidence, section 362; Gillett on Indirect and Collat'l Ev. section 213; *Chicago & E. I. R. R. Co.* v. *Randolph* (Ill.) 65 N. E. 142; *Baltimore & O. R. R. Co.* v. *Rambo,* 59 Fed. 75, 8 C. C. A. 6; *Parker v. Steamboat Co.,* 109 Mass. 449; *Robinson v. Exempt Co.,* 103 Cal. 1, 36 Pac. 955, 24 L. R. A. 715, 42 Am. St. Rep. 93.

Appellant requested court to instruct the jury to return a verdict in its favor, "no cause of action." The refusal of the court to so instruct the jury is now assigned as error. Appellant seeks to invoke and apply the rule in this case respecting the degree of care that plaintiff was bound to exercise as was announced in the case of *Silcock v. R. G., etc., R. Co.,* 22 Utah, 185, 61 Pac. 565. By an examination of that case, it will be seen that Silcock went to the railroad station to purchase coal, and stopped with his team about twenty or thirty feet from the railroad track, and while there a belated train, running at the rate of fifty or sixty miles an hour, frightened the team, which became unmanageable, collided with the train, and was killed, and the plaintiff injured. On a previous occasion he had stopped at the same place with his team while the same train passed by, and he testified that "this particular train went through rapidly enough to probably frighten his team." In the course of the opinion it is said:

"He [plaintiff] was chargeable with the knowledge of the fact that the train might be late, and that it, or any other train, might pass there at any time. . . . Appellant was bound to exercise ordinary care, and that, according to the facts disclosed, demanded that the team should be left at a greater distance from the track, or at least securely tied."

It thus clearly appears that the facts in that case and in the case at bar are not at all similar. It is not claimed that the defendant in this case had been accustomed to pushing its cars off its switch-tracks and onto the highway. In fact, for aught that appears in the record, the night in question was the first time that anything of the kind ever occurred. Therefore it cannot be held that plaintiff was chargeable with knowledge that defendant might at any time push its cars off the tracks and across the highway and leave them there. If plaintiff's team had been frightened by a passing train, or by one of the switch engines in defendant's yards, a different proposition from the one before us would be presented, and in that case the rule laid down in the *Silcock Case* might control. The record shows that the wagon road on which the plaintiff was traveling at the time he received the injuries complained of was a highway that was extensively used and traveled by the public. Plaintiff testified that the night was very dark, and on this point he is corroborated by the testimony of other witnesses. The witness Jenkins testified that he could not see the cars until he "got pretty close to them." And again he says: "Notwithstanding the fact that there was snow on the ground, I could not see the cars until I got right up to them." Mrs. Stella Thomas, a witness for the defendant, passed over the road in a cutter on the night of the accident, and she testified on this point as follows: "We did not see the cars until we got right close to them, and then we had to turn to the right." The cars, according to the testimony of all the witnesses who testified respecting them, were low flat cars. No lights were placed near them. In fact, nothing was done by defendant to advise or warn travelers that the cars were standing across the highway. We are of the opinion, and so hold,

that, under the facts and circumstances of this case as disclosed by the evidence, the question of negligence on the part of the defendant, and that of contributory negligence of the part of the plaintiff, were properly submitted to the jury, and that the court did not err in refusing to grant the peremptory instruction asked for by defendant.

We find no reversible error in the record.

The judgment is therefore affirmed, with costs.

STRAUP and FRICK, JJ., concur.