## ANNIE HEWITT vs. CHARLES COREY.

Bristol.     October 23, 1889. — January 2, 1890.

Present: FIELD, DEVENS, W. ALLEN, C. ALLEN, HOLMES,
& KNOWLTON, JJ.

*Evidence — Impeachment of Witness — Corroboration.*

In an action by a married woman for the conversion of a horse attached as her
husband's property, on the issue whether it belonged to her or to him, his evi-
dence was that he was not the owner. To discredit him, it was shown on his
cross-examination that he had formerly included the horse in a chattel mort-
gage given by him; but he added, without objection, that he was ignorant of
that fact when he signed the mortgage, and that upon finding it out he told the
mortgagee the horse was not his and was improperly included. Thereupon the
mortgagee was permitted to testify, in corroboration of the husband, that soon
after the mortgage was signed, and before the attachment, the husband came to
him and told him the horse did not belong to him, and ought not to be in the
mortgage. *Held,* that the testimony of the mortgagee was competent.

The defendant sought to ask another witness whether the mortgagee did not tell
him after the attachment that he considered his title to the horse as good as
to any property named in the mortgage. *Held,* that the question was clearly
incompetent.

TORT by a married woman against a deputy sheriff for the
conversion of a horse. Trial in the Superior Court, before
*Dunbar,* J., who allowed a bill of exceptions, which appear in
the opinion.

. The case was argued at the bar in October, 1889, and after-
wards was submitted on the briefs to all the judges except
*Morton,* C. J.

*W. H. Fox,* for the defendant.

*S. M. Thomas,* for the plaintiff.

C. ALLEN, J.   Mrs. Hewitt sued for the conversion of a horse,
which the defendant had attached as property of her husband.
The question was, whether the horse belonged to her or to her
husband.   He testified in her behalf that he was not the owner.
In order to discredit his testimony, it was shown on his cross-
examination that he had formerly included it in a mortgage
of personal property given by him; but he added, that he did
not know that the horse was included when he signed the mort-
gage, and that as soon as he found that it was he went to the

mortgagees and told them that the horse did not belong to him, and ought not to be embraced in the mortgage. This testimony came in without objection, and the defendant made no motion to strike it out as irresponsive or incompetent. The plaintiff afterwards, by way of confirmation of her husband's explanation, called one of the mortgagees, who testified, that a day or two, perhaps longer, after the mortgage was signed, the husband came to him and told him the horse did not belong to him and ought not to be in the mortgage. This, according to the testimony, was before the attachment by the defendant. The defendant's exception is to this testimony by the mortgagee.

It was held in *Commonwealth* v. *Wilson*, 1 Gray, 337, 340, that the rule excluding such testimony does not apply to a case where the other party has sought to impeach the witness on cross-examination. This decision was affirmed in *Commonwealth* v. *Jenkins*, 10 Gray, 485, 489, 490, where it is said that such confirmatory evidence is competent where a witness is sought to be impeached by evidence tending to show that, at the time of giving his evidence, he is under a strong bias, or in such a situation as to put him under a sort of moral duress to testify in a particular way ; or where an attempt is made to impeach the credit of a witness by showing that he formerly withheld or concealed the facts to which he has now testified. In the present case, the witness had done an act which, unexplained, appeared to be inconsistent with his testimony, and to show that at the time of giving the mortgage he claimed to own the horse. His explanation, if believed, went to show that he did not consciously do anything which amounted to an assertion of title in himself. His statement to the mortgagee, made before the present controversy arose, would have a legitimate tendency to confirm his explanation, and if he might himself testify to this statement, there can be no good reason why the mortgagee might not also testify to the same thing.

Clearly distinguishable from this is a case where it appears that the witness has at other times made statements inconsistent with his testimony, and where it is plain that he must have been false at one time or the other. In such case he is discredited by reason of his contradictory statements at different times, and it is no restoration of his credit to show that at still other times he

has made statements in accordance with his testimony. This distinction is clearly pointed out and dwelt upon in *Commonwealth* v. *Jenkins*, *ubi supra*. In the present case, let it be assumed, by way of making a strong illustration, that the witness when signing the mortgage was the victim of imposition or fraud, whereby the horse was inserted therein without his knowledge, he being blind, or illiterate, and that he made a great outcry as soon as he discovered the fact, and took steps to correct the mistake and to punish the perpetrators ; certainly this would be fair testimony for the consideration of any tribunal which might have to pass upon the facts. The testimony of the mortgagee in the present case does not differ in principle, and its competency is supported, not only by the authorities cited, but by the decisions of other courts, and by various text-books. *Robb* v. *Hackley*, 23 Wend. 50. *Hester* v. *Commonwealth*, 85 Penn. St. 139, 158. *French* v. *Merrill*, 6 N. H. 465. But see *Reed* v. *Spaulding*, 42 N. H. 114, as somewhat qualifying *French* v. *Merrill*. *State* v. *De Wolf*, 8 Conn. 93, 99, 100. *Stolp* v. *Blair*, 68 Ill. 541, 544. *People* v. *Doyell*, 48 Cal. 85, 91. 1 Greenl. Ev. § 469. Taylor, Ev. § 1476. 2 Russ. Crimes, (7th Am. ed.) 940. Whart. Crim. Ev. § 570.

The defendant sought to ask one White, another witness, whether the mortgagee did not say to him, after the attachment, that he considered his title to the horse as good as to any property named in the mortgage. This question was clearly incompetent.

For these reasons, in the opinion of a majority of the court, the entry must be

*Exceptions overruled.*