## BALTIMORE & O. R. CO. *v.* RAMBO.

(Circuit Court of Appeals, Sixth Circuit. November 6, 1893.)

### No. 78.

1. OPINION EVIDENCE—TESTIMONY OF NONEXPERT—PHYSICAL CONDITION.
   A nonprofessional witness, who has attended one suffering from personal injuries, and has had opportunity to observe his condition, may testify as to his apparent sufferings, and his expressions and acts in connection therewith.

2. SAME.
   The conclusions of such a witness from facts which he observed are not incompetent where they are inferences from many minor details which could not be adequately presented to the jury except by the statement of such inference or opinion.

3. WITNESS—IMPEACHMENT—CONVICTION OF INFAMOUS CRIME.
   In Ohio, in civil cases, though there is no express statutory provision concerning it, previous conviction of an infamous crime is relevant to impeach the credibility of a witness.

4. BEST AND SECONDARY EVIDENCE—CONVICTION OF CRIME.
   The record of the indictment, trial, and judgment being the best evidence of a conviction for burglary, it is error to allow testimony of another that a witness pleaded guilty to such charge.

5. CARRIERS—INJURY TO PASSENGER—OPERATION OF LINE.
   In an action by a passenger against a railroad company for personal injuries, where there is evidence tending to show the operation of the road by defendant at the time such injuries were sustained, defendant cannot escape liability by showing that its charter did not authorize it to operate such road, and that the ticket held by the passenger provided that defendant assumed no responsibility beyond its own line.

6. WITNESS—CONTRADICTING.
   Where witnesses deny that they made statements that attempts had been made to bribe them, evidence to contradict such denials simply goes to the credibility of the witnesses, and is incompetent as substantive evidence tending to show the fact of such bribery.

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

At Law. Action by Byron O. Rambo against the Baltimore & Ohio Railroad Company for personal injuries. Verdict and judgment for plaintiff. Defendant brings error. Reversed.

J. H. Collins, for plaintiff in error.

Skiles & Skiles, for defendant in error.

Before JACKSON and TAFT, Circuit Judges, and BARR, District Judge.

TAFT, Circuit Judge. This was a writ of error to the judgment of the circuit court of the United States for the northern district of Ohio, eastern division, in favor of Rambo, the plaintiff below, against the Baltimore & Ohio Railroad Company. The plaintiff alleged in his petition that the Baltimore & Ohio Railroad Company was a corporation under the laws of the state of Maryland, owning and operating a line of railroad running through the county of Richland, and state of Ohio; that it was a common carrier of passengers for hire between Shelby, Ohio, in Richland county, and the city of Chicago, in Illinois; that on April 6, 1889, in consideration of fare paid, the defendant company received the plaintiff as a passenger at Shelby for passage to the city of Chicago; that by reason of the negligence of the defendant in the operation of the train, and in failing to keep its track in good repair, the car in which the plaintiff was, was thrown from the track into collision with an oil tank, thereby severely injuring the plaintiff. The Baltimore & Ohio Railroad Company, in its answer, admitted that it was a corporation organized under the laws of the state of Maryland, and that it was operating a line of railroad through the county of Richland, Ohio, but denied all other averments in the petition. On the trial, the chief issue of fact was the extent of the plaintiff's injuries. It was contended on his behalf that he was suffering from paralysis of his left leg and the muscles of his back, so as to permanently disable him, while the defendant company maintained that he was not suffering from paralysis, but was feigning disability for the purpose of increasing the amount of his recovery. There were called for the plaintiff medical and nonmedical witnesses, who testified to the suffering of the plaintiff, and the character of his injuries; while the company, in addition to medical experts, called many of the neighbors of the plaintiff, who testified to bodily movements and acts of the plaintiff subsequent to the accident, impossible if he in fact was suffering from paralysis. The case resulted in a verdict for the plaintiff in the sum of $10,000.

The first assignment of error is that the court erred in overruling the objections of the defendant to testimony offered by plaintiff of nonprofessional witnesses upon the physical condition of the plaintiff after the accident. These witnesses were in attendance upon plaintiff during his illness, and had every opportunity to observe his condition. One of plaintiff's witnesses was interrogated as follows: "You may state from what you observed, being around

and about him, his condition and appearance, as to whether or not he suffered in any way." To which witness answered: "I would say, as far as I could see myself, that he suffered as much pain as any man I ever helped to attend." Again: "During the time you attended him, where did he complain that he was suffering; that is, in what portion of his body? Answer. His stomach, his left side right below the ribs, and right in the center of his back." Again: "In what way did he act or express himself with reference to his suffering pain, in your presence? Answer. His pain was in his back, and he could not move. His body he could not move, but turned his head from side to side; and if you would touch him he would holler, 'Oh, my back!'"

Such evidence was clearly admissible. This is expressly ruled in the case of Insurance Co. v. Mosley, 8 Wall. 397-405, where Mr. Justice Swayne, to illustrate how declarations may be evidence as verbal acts, uses this language:

"Upon the same ground the declarations of the party himself are received to prove his condition, ills, pain, and symptoms, whether arising from injuries, sickness, or accidents by violence. If made to a medical attendant, they are of more weight than if made to another person; but to whomsoever made they are competent evidence. Upon this point the leading text writers of evidence, both in England and in this country, are in accord."

It is objected also that some of the above statements are mere matter of opinion and conclusions of the witness from facts which he observed. This is true, but it does not render the statements incompetent. Where the statement of a witness is an inference from many minor details which it would be impossible for him to present in the form of a picture to the jury except by the statement of his inference or opinion, that opinion is generally competent. Parker v. Steamboat Co., 109 Mass. 449. In Village of Shelby v. Clagett, 46 Ohio St. 549, 22 N. E. 407, it was held that a nonprofessional witness, who had had opportunities to observe a sick or injured person, might give in evidence his opinion of such person in respect of his being weak and helpless or not, and of the degree of suffering which he endured, provided such opinion was founded on his own observation of the person to whom his evidence related, and was limited to the time that the person was under his observation.

The second assignment of error is that the court erred in overruling the objection of the defendant to the testimony of the plaintiff in rebuttal, offered to impeach a witness of defendant,—Straub. Straub's evidence was very important. He had nursed the plaintiff gratuitously for a number of days and nights. He said that he saw the plaintiff walk about in his house without canes, with as much freedom as if he had suffered no injury, and that on this account he would not give a deposition for the plaintiff. For the purpose of breaking down Straub's evidence, counsel for the plaintiff asked the plaintiff in rebuttal, "Were you at the trial when Straub was arrested for burglary of the hardware store? Answer. Yes, sir. Question. You may state to the jury whether he pleaded guilty." Counsel for defendant then objected to the question on the ground

that no foundation had been laid for this evidence in the cross-examination of Straub; and, further, that this was not the best evidence of the fact, even if it were competent. The court held, if the witness could swear that he was in court, and heard Straub enter a plea of guilty, that fact could be proven independent of the record, and the witness was permitted to say that Straub had pleaded guilty.

Whether this ruling was erroneous or not depends upon two questions:

First. Was it competent in this, a civil, case, to impeach the credibility of a witness by proving he had been convicted of a felony?

Second. If competent, could it be shown otherwise than by the record of the conviction?

By section 858 of the Revised Statutes of the United States it is provided:

"In the courts of the United States no witness shall be excluded in any action on account of color, or in any civil action because he is. a party to or interested in the issue tried; provided, that in actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate or ward, unless called to testify thereto by the opposite party or required to testify thereto by the court. In all other respects the laws of the state in which the court is held shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law and in equity and admiralty."

The case at bar is a trial at common law, within the meaning of this section, and the question arises, what are the laws of Ohio governing the competency of witnesses in reference to convictions of crime?

By the laws of Ohio (section 5240, Rev. St.) "all persons are competent witnesses except those of unsound mind and children under ten years of age who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined or of relating them truly." This section is a part of the Civil Code of Ohio, and relates only to civil cases. Steen v. State, 20 Ohio St. 333. Sections 5241 and 5242 contain exceptions as to the competency of witnesses, none of which is important here. By section 7284, a section of the Criminal Code of Procedure of Ohio, it is provided that:

"No person shall be disqualified as a witness in any criminal prosecution by reason of his interest in the event of the same, as a party or otherwise, or by reason of his conviction of any crime; and husband and wife shall be competent to testify on behalf of each other in all criminal prosecutions, but such interest, conviction or relationship may be shown for the purpose of affecting his or her credibility."

It is apparent, therefore, that while in criminal cases the statute of Ohio expressly declares that convictions of crime shall be relevant for the purpose of affecting the credibility of any witness, the section relating to witnesses in civil cases makes no such provision. At common law, conviction of a felony rendered a witness incompetent. Logan v. U. S., 144 U. S. 263, 12 Sup. Ct. 617. In nearly all the states, this rule of the common law has been abolished, with the

express declaration, like that contained in section 7284, above quoted, that a conviction shall be competent evidence to affect the credibility of the witness. We have, however, found no case in Ohio or elsewhere in which the question of the relevancy of such evidence, when not expressly declared by the statute, has been raised and decided. In the case of Logan v. U. S., 144 U. S. 263, 12 Sup. Ct. 617, the plaintiff in error complained because the court below permitted two witnesses to testify; one of whom had been convicted of crime in North Carolina, and the other of whom had been convicted in Texas, and subsequently pardoned. The court below, after holding the witnesses competent to testify, had allowed the records of their convictions to be introduced as evidence on the question of their credibility. The supreme court sustained the view of the court below that the witnesses were competent to testify under the rules of the common law which governed the trial of that case, on the ground that in the one case the conviction in a foreign jurisdiction was not a disqualification under the common law; and, in the other, that the disability arising from the conviction in Texas, where the case was tried, had been removed by a full pardon. After reaching this conclusion Mr. Justice Gray uses these words:

"Whether the conviction of either witness was admissible to affect his credibility is not before us, because the ruling on that question was in favor of the plaintiff in error."

It is difficult to see any reason why the legislature should permit the credibility of a witness in a criminal case to be attacked by proof of former conviction, but should withhold such permission in civil cases. If the court can, from analogies at common law, find the rule to be that in civil cases, also, the previous conviction of witnesses may be introduced to impeach their credibility, it is its duty to do so. It is decided in Carpenter v. Nixon, 5 Hill, 262, by the supreme court of New York, Chief Justice Nelson announcing the opinion, that the record of the conviction of a crime less than a felony was admissible at common law to impeach the credibility of witnesses; citing 2 Hale, P. C. 278; King v. Crosby, 5 Mod. 15; Huxley v. Berg, 1 Starkie, 98; 1 Phil. Ev. 35; Phil. Ev. (Cow. & H. Notes,) p. 66. Of course, the question whether a conviction of a felony was competent at common law to impeach the credibility of a witness could not arise, because the witness was absolutely disqualified. When this disqualification is removed, however, it would seem to follow that, as the conviction of a less crime than a felony had always been competent in impeachment, the conviction of a felony would, a fortiori, be relevant for the same purpose.

We therefore hold that in Ohio, in civil cases, though there is no express statutory provision concerning it, previous conviction of an infamous crime is relevant to impeach the credibility of a witness.

The second question is much freer from difficulty. Straub had not been asked, when on the stand, whether he had ever been convicted of burglary, and sent to the penitentiary. The question here objected to was put to another witness than Straub, and it was sought out of that witness' mouth to prove by oral evidence that Straub had pleaded guilty to the charge of burglary. This was

clearly incompetent. The best evidence of the conviction was the record of the indictment, of the trial, and the judgment of the court. So long as that evidence was available, nothing less was competent. Much discussion has arisen over the right on cross-examination to ask a witness whether he has been convicted of a felony. In some states it is held that such a question is improper, and that the conviction must be proved by the record. Com. v. Quin, 5 Gray, 478; People v. Reinhart, 39 Cal. 449; Clement v. Brooks, 13 N. H. 92; Johnson v. State, 48 Ga. 116; King v. Inhabitants of Castell Careinion, 8 East, 77. Contra, Real v. People, 42 N. Y. 270. However this may be on the cross-examination of the witness whose credibility is attacked, there is no authority anywhere to be found holding that the conviction of one witness may be proven by the oral testimony of another. It was therefore error for the court below to allow the plaintiff to testify that he had heard Straub plead guilty to burglary. Greenl. Ev. § 467; Whart. Ev. § 567; Id. § 63. The material character of this evidence can only be fully realized by an examination of the entire record. The witnesses who testified to the acts by the plaintiff, impossible in a paralytic, numbered 14. The claim on the part of the plaintiff was that these witnesses, or many of them, had been suborned by the claim agent of the railroad company. Evidence that one of the witnesses was a convicted felon reflected on the entire case made by their evidence.

For this reason the judgment must be reversed, and a new trial had. Before leaving the case, however, we shall consider certain questions arising on other assignments of error which will come again before the trial court for decision.

The fourth assignment of error is based on the court's refusal to give the following charge:

"The charters of the defendant in this case, and of the Baltimore & Ohio & Chicago Railroad Company, whose road runs from Chicago Junction across the states of Ohio and Indiana to the west line of the last-named state, and of the Baltimore & Ohio & Chicago Railroad Company, Illinois Division, whose line begins at the terminus of the last-named company and runs thence through a portion of the state of Illinois to and into the city of Chicago, are in evidence; and, as the accident of which the plaintiff complains in this case occurred on the line of the company last named, no recovery can be had by the plaintiff in this case."

The defendant introduced in evidence the charter of the Baltimore & Ohio Railroad Company, passed by the legislature of the state of Maryland in 1827. This charter authorizes the Baltimore & Ohio Railroad Company to build a railroad from Baltimore to the Ohio river. The defendant also introduced in evidence the charters of the Baltimore & Ohio & Chicago Railroad Company of Ohio, the Baltimore & Ohio & Chicago Railroad Company of Indiana, and the Baltimore & Ohio & Chicago Railroad Company of Illinois, together with the record proceedings of the consolidation of the Baltimore & Ohio & Chicago Railroad Company in Ohio and Indiana. The corporations thus formed were authorized to construct and operate a line of railroad running from Chicago Junction across the states of Ohio and Indiana and Illinois into Chi-

cago. The accident occurred on this line inside of the city of Chicago. The ticket upon which the plaintiff traveled was issued to him by the agent of the defendant company at Shelby, in the state of Ohio. The ticket was what is called a "limited ticket," with certain conditions incorporated in a contract which was signed by the plaintiff. Among the conditions were these:

"Issued by Baltimore & Ohio Railroad Trans., Ohio Div., subject to the following conditions: 'Good for one first-class passage to the point on the K. C. L. & S. K. R. R. printed in large type at the extreme top of this ticket.' Subject to the following conditions: 'In selling this ticket for passage over other roads, this company acts only as agent, and assumes no responsibility beyond its own line; and the holder, in accepting this ticket, agrees to the following conditions.'"

The ticket, it seems, entitled the plaintiff to passage from Shelby Junction, in Ohio, to Elk Falls, in Kansas, and contained a number of coupons, all of which were collected, except that coupon entitling the passenger to transportation from Kansas City to Elk Falls.

The argument for the defendant company is that the charters introduced show that the injuries were received on a railroad not belonging to it, and that could not be operated by it under its charter, and that it is not, therefore, liable to plaintiff under the condition of the ticket above quoted.

It was admitted in the answer that the defendant company owned and was operating a line of railroad in Richland county, Ohio, from which it may be presumed that the Maryland charter of 1827 has been so amended as to authorize its operation of lines west of the Ohio river. It also appeared in evidence that the car which the plaintiff took at Shelby Junction was a day car, running through from Shelby Junction to the city of Chicago. Moreover, a folder or time table issued by the Baltimore & Ohio Company was introduced in evidence, in which the line from Chicago Junction to Chicago is referred to as the Chicago Division of the Baltimore & Ohio Railway Company, and upon the map which appears on one side of the folder the line between Chicago Junction, Ohio, and the city of Chicago is marked the Baltimore & Ohio Railway. It is said that the folder contains the time tables, also, of the Baltimore & Ohio Southwestern system and the Pittsburgh & Western Railroad Company, and that these are notoriously not a part of the Baltimore & Ohio Railroad Company proper. This is true, but the lines referred to are designated on the folder by their proper names. In the absence of any evidence at all, it would doubtless be presumed that the train running over the road of the Baltimore & Ohio & Chicago Railroad was operated by the Baltimore & Ohio & Chicago Railroad Company, owning the line; but that presumption obtains only in the absence of other evidence. The only evidence worthy of consideration in the case tends to show that the train was operated by the Baltimore & Ohio Railroad Company, the defendant below. We are fortified in this conclusion by the failure of the defendant company to disprove its operation of the line into the city of Chicago, if in fact it was not responsible therefor. It could have shown by its own employes that at Chicago Junction the train was turned over by its

agents to the agents of another company. It could have produced the coupons on the ticket taken from the plaintiff entitling him to passage from Shelby to Chicago, upon which the name of the operating company appeared printed. It did none of these things; and its contention now, that its liability was not shown by the evidence, can hardly be received with patience.

The sixth assignment of error is based on the refusal of the court to give the jury this charge.

"The testimony of witnesses called to testify to conversations with witnesses Wort and son, or between Wort and son and Mrs. Wort, and with the witnesses Tucker, Cloran, Mrs. Kochendorfer, and Miss Kochendorfer was for the purpose of impeaching those witnesses, and cannot be considered by the jury for any purpose other than so far as it affects the credibility of such witnesses so contradicted, if they were contradicted."

This charge the court refused, and gave the charge which is made the basis of the seventh assignment of error. Without quoting what the court did say in reference to these conversations with the witnesses named, it is sufficient to state that the court did not clearly give, either in words or in substance, the charge set forth as requested in the sixth assignment. We think that the defendant was entitled to the charge as requested, and the injury to the defendant in the refusal by the court to give it is made to appear more plainly in the eighth assignment of error, as follows:

"Counsel for plaintiff argued and urged upon the jury that the testimony contradicting the witnesses Wort and son, Tucker, Cloran, Mrs. Kochendorfer, and Miss Kochendorfer, tended to show that J. E. Rankin, the special agent of the defendant, had offered the witness Cloran money to testify falsely, and that the testimony contradicting these witnesses proved that the defendant, through its agent, J. E. Rankin, had been guilty of bribery, or attempted bribery, in bringing the witness Cloran; and that the inference from this testimony was that all of the other witnesses had also been bribed by the defendant, through its special agent. To this argument counsel for the defendant objected, and called the attention of the court thereto at the time, and thereupon the court stated to counsel and the jury that there was testimony tending to support the claim of counsel that offers in form of money and clothing were made to witnesses to come and testify in this case, and that there was enough of such evidence to justify counsel in claiming to the jury that these charges of bribery were sustained, and the court declined to refuse counsel the right to argue upon this point."

The witnesses named in the foregoing assignment had been called by the defendant to testify to acts of the plaintiff after his injury, impossible if he were suffering from paralysis. To contradict these witnesses, inquiry was made of them by plaintiff's counsel as to whether they had not made statements that Rankin, the special agent of the Baltimore & Ohio Railroad Company, had offered them, in one case money, and in another clothing, to testify falsely in the case. These inquiries were answered by the witnesses in the negative. Witnesses were then called to contradict these denials, and the testimony referred to in the request to charge was this testimony of the contradicting witnesses. It is manifest that such evidence was competent only for the purpose of contradicting defendant's witnesses, and was wholly incompetent as substantive evidence tending to show that the agent of the defendant company had made the offers

which were the subject-matter of the conversations testified to by the contradicting witnesses. It is quite true that it was competent for the plaintiff to introduce evidence in rebuttal, tending to show that the authorized agent of the Baltimore & Ohio Railroad Company had been engaged in suborning witnesses to testify falsely. Such evidence was relevant on the main issue as tending to show an admission by its conduct that it had a bad case, needing false and perjured evidence to support it. Moriarty v. Railroad Co., L. R. 5 Q. B. 314; and the cases cited under section 1265, Whart. Ev. It is also true that there was direct evidence in the case upon which an argument might fairly be made that the special agent of the Baltimore & Ohio Railroad Company had been guilty of the conduct charged, but the plaintiff's rebuttal witnesses who testified to conversations with the defendant's witnesses had no personal knowledge of the facts detailed in those conversations as related by them, and were wholly incompetent to testify to those facts as substantive evidence. It was the duty of the court, therefore, to caution the jury that evidence of these conversations with defendant's witnesses was only evidence to contradict them, and only affected the credibility of those witnesses, but that it did not tend to establish improper conduct on the part of the agent of the railroad company. It is very difficult, indeed, for a jury to discriminate between evidence which is only to impeach the credibility of witnesses and evidence which tends to establish facts material to the main issue. That difficulty makes it especially important that the court should emphatically caution the jury as to the use which they are entitled to make of evidence which simply goes to the credibility of witnesses.

We think, therefore, that the sixth and seventh assignments of error, and that part of the eighth assignment already referred to, are well taken, and on this ground, also, the judgment should be reversed.

Judgment reversed, with instructions to order a new trial.