## DI CARLO v. UNITED STATES.*

### RUFFINO v. SAME.

(Circuit Court of Appeals, Second Circuit. March 9, 1925.)

Nos. 192, 199.

**1. Criminal law ⬤⟜407(1) — Identification of accused in his presence is admissible only where trial court believes from accused's conduct that he acquiesced therein.**

Identification of accused, made out of court, is not admissible merely because made in accused's presence, but only when trial court, with some warrant, believes from accused's conduct that he acquiesced therein.

**2. Witnesses ⬤⟜414(2)—Statements by witness whose veracity is challenged, made before motive to fabricate arose, are admissible.**

Where witness' veracity is subject to challenge because of motive to fabricate, statements made by him out of court, before motive arose, consistent with testimony on stand, are admissible.

**3. Criminal law ⬤⟜417(9) — Declarations of government's witness, convicted of buying narcotics from accused, that accused had attacked him, held admissible.**

Declarations of government's witness, who had been convicted of buying narcotics from accused, and of selling them, identifying accused as persons who attacked him, made immediately after attack and in hospital, were admissible in prosecution for obstructing justice, and of conspiracy to intimidate and injure witness, under Criminal Code, §§ 135, 136 (Comp. St. §§ 10305, 10306), as being made before motive to fabricate arose.

**4. Criminal law ⬤⟜1169(2)—Whether identification of accused by government's witness was admissible held immaterial, in view of admissibility of previous declarations.**

Where declarations of government's witness in prosecution for sale of narcotics, identifying accused as persons who attacked him, made immediately after assault, were admissible in prosecution for obstructing justice and conspiracy to injure and intimidate witness, under Criminal Code, §§ 135, 136 (Comp. St. §§ 10305, 10306), it was immaterial whether witness' subsequent identifications, standing alone, would have been admissible.

**5. Criminal law ⬤⟜417(9)—Identification of accused by government's witness held admissible, if made under circumstances from which jury could say that they antedated motive to fabricate.**

Declarations of government's witness, identifying accused, made some time after assault on him, were admissible in prosecution under Criminal Code, §§ 135, 136 (Comp. St. §§ 10305, 10306), for obstructing justice and conspiracy to injure witness, where circumstances were such that jury could say that identification antedated motive of witness to fabricate.

*Certiorari denied 45 S. Ct. 640, 69 L. Ed. ——.

**6. Criminal law ⬤⟜1166½(1)—Commitment of government's witness for perjury in presence of jury held not reversible error.**

Commitment of government's witness for perjury in presence of jury, because of her refusal to identify accused, previously identified by her before the grand jury, though inadvisable practice, because of possibility of intimidating other witnesses, was not reversible error.

**7. Witnesses ⬤⟜380(5) — Latitude allowed prosecution in examining its recalcitrant witness is within trial court's discretion, and inquiry may extend to contradictory statements.**

Latitude allowed prosecution in examining its recalcitrant witness is wholly within discretion of trial judge, and questions may extend to cross-examination and inquiry whether witness has not at other times made contradictory statements, so that jury may gather truth from his whole conduct and bearing.

**8. Criminal law ⬤⟜351(10)—Testimony that accused's wife asked witness to secrete revolvers held admissible.**

In prosecution for obstructing justice and conspiracy to intimidate and injure witness, under Criminal Code, §§ 135, 136 (Comp. St. §§ 10305, 10306), testimony that accused's wife asked witness to secrete revolvers was admissible, since it is always permissible to show that accused has made threats to conceal suspicious evidence.

**9. Criminal law ⬤⟜351(8)—Evidence of offer of bribe by one of accused's attorneys held competent, notwithstanding name of attorney was suppressed.**

In prosecution for obstructing justice and conspiracy to intimidate and injure witness' person, under Criminal Code, §§ 135, 136 (Comp. St. §§ 10305, 10306), evidence that witness had been offered bribe by one of accused's attorneys was competent, notwithstanding name of attorney was mistakenly suppressed, out of consideration for attorney, under agreement between both sides.

**10. Criminal law ⬤⟜723(1)—Address by United States attorney held not improper.**

Address by United States attorney, in prosecution under Criminal Code, §§ 135, 136 (Comp. St. §§ 10305, 10306), for obstructing justice and conspiracy to intimidate and injure witness, calling on jury to end rule of "dagger and stiletto" and "invisible power behind these defendants," *held* not improper, notwithstanding accused used revolvers, and not stilettos.

**11. Criminal law ⬤⟜713—Prosecuting attorney, in addressing jury, may properly endeavor to persuade jury of truth of his side, and is not limited to impartial statement of evidence.**

Though prosecuting attorney, in addressing jury, is more rigidly limited than defense, he is not confined to impartial statement of evidence, but may endeavor to persuade jury of truth of his side by oratorical emphasis.

**12. Criminal law ⬤⟜1166(1)—Consolidation of indictment charging misdemeanor with one charging felony held not prejudicial, where accused was acquitted of misdemeanor.**

Consolidation of indictment charging misdemeanor with indictment charging felony was

not prejudicial, where accused was acquitted of misdemeanor and evidence was same as to each indictment.

13. **Criminal law ⚖➣427(4)—Evidence that bail for defendant was furnished by persons connected with codefendant held admissible to show defendants were still acting in unison.**

In prosecution for obstructing justice and for conspiracy to intimidate and injure witness, under Criminal Code, §§ 135, 136 (Comp. St. §§ 10305, 10306), evidence that bail for one defendant was furnished in part by persons connected with codefendant *held* admissible to show that defendants were still acting in unison, notwithstanding conspiracy had ended.

14. **Criminal law ⚖➣1156(1)—Order refusing new trial on alleged recantation by government's witness held not reviewable.**

Order refusing new trial after conviction, sought on alleged recantation by government's witness, was not reviewable; defendant's only recourse being to executive clemency.

In error to the District Court of the United States for the Western District of New York.

Joseph J. Di Carlo and Joseph Ruffino were convicted of conspiring to intimidate and injure a person who had testified as a witness, and Di Carlo was also convicted of obstructing justice and intimidating a witness, and they separately bring error. Affirmed.

Louis L. Thrasher and John S. Leonard, both of Jamestown, N. Y., for plaintiff in error Di Carlo.

Ernest W. McIntyre, of Buffalo, N. Y., for plaintiff in error Ruffino.

William J. Donovan, of Buffalo, N. Y., for the United States.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge. The defendants, with others, were indicted under two indictments, one for obstructing justice and intimidating a witness (section 135 of the Criminal Code [Comp. St. § 10305]), and the other for conspiracy to intimidate and to injure a person who had testified as a witness (section 136 of the Criminal Code [Comp. St. § 10306]). Each indictment had two counts, and the two were consolidated and tried as one. Di Carlo was convicted on both indictments; Ruffino was acquitted on the first indictment and convicted on the second. Each took out a separate writ. Since no question is raised of the sufficiency of the proof, it is necessary to set out only the outline of the charge against them.

One Pattitucci was a morphine addict, who had bought his supplies from Di Carlo, and not only used them himself, but dispensed them to others. His restaurant was eventually raided, and he was arrested with others, and convicted in the District Court for the Western District of New York, and sentenced to two years' imprisonment, which he never served. By arrangement with the United States attorney he later became the principal witness before the grand jury in securing an indictment for the sale of morphine against Di Carlo and one Giallelli, another defendant in the indictments at bar, who was convicted, but did not take out a writ. The indictment of Di Carlo and Giallelli for selling morphine had been set for trial, and Pattitucci had 'been subpœnaed as a witness.

On the night of January 1, 1924, Pattitucci, who was in company with his leman, May Gilmore, was attacked on the streets of Buffalo by two armed men, one of whom shot him in the chin. He ran from them and escaped further injury, finally reaching a hospital, where he was cared for. His assailants had stepped out of a motor car, which had been following him, and which contained two other men. Pattitucci identified his assailants as Di Carlo and Giallelli, and the two men in the car as Ruffino and one Capodicaso, a defendant who was acquitted on both indictments.

The chief issue at the trial was as to the identification, all the defendants giving proof of an alibi. Di Carlo produced many witnesses to show that at or about the time of the assault he was at the New York Central Station, some distance from the scene, and Ruffino that he was at home. The points raised in the appeal concern the conduct of the trial, especially the admission of certain evidence by the learned trial judge. It will be convenient to take up the cases separately, remembering, however, that Ruffino raises the same objections as Di Carlo and one or two more besides.

### Di Carlo's Case.

[1] The first point arises from the admission of the evidence of a number of witnesses that Pattitucci had out of court declared that Di Carlo and Giallelli were his assailants on the night in question, and that Ruffino and Capodicaso were the men in the car. Two policemen, Bragg and Gorski, found Pattitucci within five minutes of the shooting, who told them that Di Carlo and Giallelli had shot him. He was taken to a hospital, and there gave their names to another officer, who arrested them. Ruffino was identified by the license number of his car. At the police station that same night Pattitucci identified all

four of the men before a number of witnesses, who so swore. The admission of this evidence, if incompetent, would, we think, in so close a case be a serious error.

The argument of the prosecution in support of these declarations will scarcely stand. They suggest that, as they took place in the presence of the defendants, they were admissible. But this is true only in cases where the trial judge with some warrant believes that from the conduct of the defendant after hearing himself identified a reasonable inference of acquiescence may be inferred. Christie's Case, [1914] A. C. 545; State v. Claymonst, 96 N. J. Law, 1, 114 A. 155. It is a common error to suppose that everything said in the presence of a defendant is ipso facto admissible against him. While the question is a ·delicate one, dependent largely upon the discretion of the trial judge, nevertheless more must appear than that the defendant heard the statement. We think that the evidence of how the defendants met Pattitucci's accusation in the police station was plainly not enough to admit the identifications as admissions.

[2] However, we believe that the evidence was competent on quite another ground. It is well settled that, when the veracity of a witness is subject to challenge because of motive to fabricate, it is competent to put in evidence statements made by him consistent with what he says on the stand, made before the motive arose. The common sense of such a rule has been too strong for the formal objection that the evidence is hearsay, and indeed the objection is in substance not good anyway, since the witness is by hypothesis there to be cross-examined. This was allowed arguendo by Justice Story in Ellicott v. Pearl, 10 Pet. 412, 439, 9 L. Ed. 475, and is generally accepted law. People v. Katz, 209 N. Y. 311, 103 N. E. 305, Ann. Cas. 1915A, 501; State v. Flint, 60 Vt. 304, 316–318, 14 A. 178; Com. v. Jenkins, 10 Gray (Mass.) 485, 489 (semble) ; Hewitt v. Corey, 150 Mass. 445, 23 ·N. E. 223. Other cases may be found cited in Wigmore (2d Ed.) § 1129.

[3] On the other hand, it is held in many jurisdictions, probably in the greater number of those which have decided the question, that earlier identifications off the stand are inadmissible, when the witness is not subject to challenge for bias. Without in any sense implying that we assent to it, and merely for purposes of argument, we may assume that this is good law. Do the facts at bar fall within it, or rather within the rule admitting declarations made before the existence of mo-

tive to fabricate? In the case of a neutral witness, the reason for admitting earlier identifications can only be because, if freshly made, they show that the subsequent identification under oath is not the result of suggestion and subconscious, though innocent, fabrication. The fresh recollection of the witness may be thought to be a valid check upon the contrivance of that pseudo memory to which we are all subject. We are far from saying that this is not an adequate ground for their admission, or that Professor Wigmore (section 1130) is not justified in supposing that they form a valid answer to attacks upon a neutral witness' testimony on the stand.

In the cases at bar Pattitucci had been convicted and sentenced, and it was plain that his testimony, if favorable, might be the means of commuting his sentence; such being the immemorial custom in such cases. He had therefore the strongest possible motive to identify upon the stand the defendants as his assailants. His declarations, of which the identifications in the police station were only a part, were therefore admissible under the established rule, if made under circumstances which precluded or made improbable the operation of the motive through which his testimony might be impeached.

His declaration to Bragg and Gorski, almost immediately after the event, was so near in time as to have the verity generally accorded to spontaneous declarations at the time, which are universally admitted. To exclude them one must suppose that, just after escaping, wounded, from a murderous attack, he should have seized upon the event as a means of escaping from his sentence, by imputing the assault to persons whom he had no reason to suppose the public authorities would be interested in coupling with the crime. To impute to him such a design seems to us fantastic.

His declaration to.Thierfeldt in the hospital, though further removed in time, also falls within the same reasoning. He may indeed have already concocted a scheme to involve Di Carlo and Giallelli in a new crime, for the sake of insuring his own release, but it seems to us only theoretically possible. He had no reason to suppose that in so doing he would comply with any desire of the police.

.[4, 5] The chief complaint is, however, not of these, but of the identifications in the police station, especially since these alone included Ruffino, whom he had theretofore been unable to identify at all. When Di Carlo and Giallelli were brought in that same

night, after their arrest following Pattitucci's statements to the police, he at once identified them as the persons who had attacked him on the street, and Ruffino as one of the men in the motor. In the view we are taking, this evidence is admissible only if still antedating his motive to escape his sentence. Several hours had indeed elapsed, but during them Pattitucci had undergone an operation, an event which may fairly be taken as engrossing his attention for the moment. It is true that the police had made the arrests, and conceivably he might have already thought that his escape would be promoted if he helped along the conviction. But it seems to us a tenuous distinction in the case of Di Carlo between his original declaration and his repetition of it by the identification in the station house. Holding, as we do, that the first was admissible, we think it quite immaterial whether or not the second would have been such, had it stood alone.

This does not, however, apply to Ruffino, whom, as we have said, Pattitucci identified for the first time at the police station. As to him, and as to Di Carlo as well, if the identification be thought to add anything to the original declaration, we believe that it was a fair question, which in the end lay with the jury, whether the circumstances were such as put the identifications outside any motive to fabricate at the time. We do not, of course, mean that the question of admissibility is not one of law, but it merges imperceptibly into the weight of the evidence, if admitted. We mean that, if the circumstances were such as left it reasonably possible for the jury to say that the identifications did in fact antedate the motive, the court should not have excluded them. That was the question of law presented, a question which, as is generally the case, turned upon how probative the evidence might be if admitted. Hence we hold that the declarations were admissible, quite independently of whether we should accept the rule in People v. Jung Hing, 212 N. Y. 393, 106 N. E. 105, Ann. Cas. 1915D, 333, and People v. Seppi, 221 N. Y. 62, 116 N. E. 793. Indeed, in People v. Jung Hing, supra, it is distinctly suggested that such declarations might be admitted if the witness were subject to impeachment. It seems to us absurd to say that, when given under such circumstances as these, they did not add strong corroboration to his testimony, given after he had for a month been in the custody of the authorities.

[6] The next point arises from the commitment in the presence of the jury of the witness Gilmore for perjury. Before the

grand jury she had identified Di Carlo and Giallelli as the persons who, stepping from the motor car, had attacked Pattitucci. At the trial she refused to say that she could any longer do so, although the learned judge allowed great latitude in her examination to the prosecution. At the conclusion of her examination she was committed for perjury. Whatever may be the rule in jurisdictions where the presiding judge may not express his opinion upon the evidence, this action is not in our judgment error in a federal court. The judge might bluntly have told the jury that he did not believe the witness, and for himself thought she was concealing the truth about the stand. We can see in this event little more than a somewhat dramatic instance of the same thing.

Our decision in Rutherford v. U. S., 258 F. 855, 169 C. C. A. 575, included such conduct by the trial judge as one ground for reversal, but there is nothing to indicate that, taken alone, it would have been regarded as enough. The record there presented a trial which we thought was unfair throughout, and this was a detail. In McNutt v. U. S., 267 F. 670 (C. C. A. 8), similar action was made a ground for reversal, largely because of its supposed effect upon other witnesses. We cannot disguise the fact that this may at times be the result; the practice is certainly inadvisable. Still it seems to us that a conviction should not be reversed on the mere possibility that witnesses may have been intimidated. That possibility is confined in substance to such witnesses as the prosecution has already examined out of court, but has not yet examined in court. In the case at bar we can find none such as to whom the possibility was more than formal, except Geraci, and as to him it appears that he had refused to testify before the grand jury. The others were either police officers or agents of the United States, except Degenhart and Leonard Smith and Davis. It seems to us fanciful to assume such a possibility as to the police officers or officials. Of the other three, Davis alone could have been affected, for the stories of Degenhart and Smith were unconstrained. Davis did no more than corroborate Delahunt, and his evidence was of slight importance.

[7] The point just considered leads to the next, which concerns the examination of the witness Gilmore herself. She told the same story as Pattitucci up to the point of the attack, when as we have said she declared that she could not identify the defendants. The prosecution, plainly surprised by this volte face, then began to cross-examine her strait-

ly, and brought out from her contradictory statements, made not only before the grand jury, but on other occasions. Her actual evidence before the grand jury was not introduced. The latitude to be allowed in the examination of a witness, who has been called and proves recalcitrant, is wholly within the discretion of the trial judge. Nothing is more unfair than to confine a party under such circumstances to neutral questions. Not only may the questions extend to cross-examination, but, if necessary to bring out the truth, it is entirely proper to inquire of such a witness whether he has not made contradictory statements at other times. He is present before the jury, and they may gather the truth from his whole conduct and bearing, even if it be in respect of contradictory answers he may have made at other times.

In St. Clair v. U. S., 154 U. S. 134, 14 S. Ct. 1002, 38 L. Ed. 936, this procedure was approved, as also in Swift v. Short, 92 F. 567, 34 C. C. A. 545 (C. C. A. 8); Hays v. Tacoma R. & P. Co. (C. C.) 106 F. 48; Tacoma v. Hays, 110 F. 497, 49 C. C. A. 115 (C. C. A. 9). See, also, Hickory v. U. S., 151 U. S. 303, 309, 14 S. Ct. 334, 38 L. Ed. 170. The question decided in Putnam v. U. S., 162 U. S. 687, 16 S. Ct. 923, 40 L. Ed. 1118, did not arise here. Nor was the right abused as in Rosenthal v. U. S., 248 F. 684, 160 C. C. A. 584 (C. C. A. 8). The possibility that the jury may accept as the truth the earlier statements in preference to those made upon the stand is indeed real, but we find no difficulty in it. If, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person and in court. There is no mythical necessity that the case must be decided only in accordance with the truth of words uttered under oath in court.

[8] The next point is that the witness Geraci was allowed to say that Di Carlo's wife had asked him to secrete certain revolvers which were in Di Carlo's house. It is always permissible to show that the defendant has made efforts to do away with suspicious evidence. That was all that was done here.

[9] The evidence of Delahunt and Davis was admissible. These witnesses were primarily sworn to contradict Di Carlo's alibi. They also said that they had been approached by one of his attorneys with the offer of a bribe. The name of the attorney was suppressed, mistakenly out of consideration for him. It is quite clear that both sides agreed to this, and it would be monstrous now to reverse the judgment because the prosecution lived up to its agreement. The evidence was clearly competent, B. & O. R. Co. v. Rambo, 59 F. 75, 82, 8 C. C. A. 6; Nowack v. Metropolitan St. Ry., 166 N. Y. 433, 60 N. E. 32, 54 L. R. A. 592, 82 Am. St. Rep. 691; Wigmore, § 280(2).

[10, 11] The address of the United States attorney is also complained of, but quite without warrant. It consisted of a moderate argument, based upon an analysis of the evidence, until the very end, when the learned counsel permitted himself by way of peroration to put some theoretical questions to the jury. These called upon them to put an end to the rule of the "dagger and the stiletto," to the "invisible power behind these defendants." We cannot find any abuse in such comments. It is indeed fatuous to complain of the allusion to the stiletto when a revolver was used. An "invisible power" might or might not be inferred from their "attitude on the stand." While, of course, we recognize that the prosecution is by custom more rigidly limited than the defense, we must decline to assimilate its position to that of either judge or jury, or to confine a prosecuting attorney to an impartial statement of the evidence. He is an advocate, and it is entirely proper for him as earnestly as he can to persuade the jury of the truth of his side, of which he ought to be thoroughly convinced before he begins at all. To shear him of all oratorical emphasis, while leaving wide latitude to the defense, is to load the scales of justice; it is to deny what has always been an accepted incident of jury trials, except in those jurisdictions where any serious execution of the criminal law has yielded to a ghostly phantom of the innocent man falsely convicted.

### Ruffino's Case.

[12] Ruffino raises only two points not raised by Di Carlo. The first is that it was error to consolidate the indictment under section 135 with that under section 136, because the first was for a misdemeanor and the second for a felony. As Ruffino was acquitted on the misdemeanor, we cannot see that he may argue that any prejudice arose from the consolidation. The evidence as to each indictment was precisely the same.

[13] The second point is that the prosecution was allowed to show that when Ruffino was arrested his bail was furnished in part by persons who were connected in one way or another with Di Carlo. The argument is that, as the conspiracy was at an end, there could have been no longer any co-operation

between the two conspirators. The evidence was slight but competent. So far as it showed anything, it showed that the two defendants were still acting in unison. In this we have nothing to do with the declarations of one conspirator admitted against another, which should be limited to the term of conspiracy. It was competent, as showing the connection between the two, to show that one assisted the release of the other upon their arrest. With the weight that should be given to such proof we have nothing to do.

[14] Finally, we cannot review the order refusing a new trial. The situation was no doubt curious and baffling. After the conviction, Pattitucci, who had quarreled with May Gilmore, tried to kill her, and, failing, poisoned himself. After his death, the defendants produced a written recantation of his evidence, stating that the defendants were innocent, and that his assault had been by others out of jealousy. The learned District Judge, after a careful consideration of the evidence submitted, concluded that the circumstances were too doubtful to demand a retrial of the cause. If it be a defect in our system of criminal procedure that such a decision is not reviewable, certainly we cannot correct it. We must decide the case upon the record here, and the defendants have no further recourse, except to executive clemency.

The judgments are affirmed.

HOUGH, Circuit Judge (concurring). I concur, but consider that on one point the court's opinion does not go far enough. Identification is often a continuing process, and when a witness in court has identified an accused, by every rule of reason previous identification at divers times and under diverse circumstances should constitute legitimate corroboration of such identifying evidence. In just the same manner would evidence of previous failure to identify be legitimate opposing evidence. There is no decision of the Supreme Court to the contrary of this, and I think we should go this far.