131 P.2d 273

**STATE v. LOPEZ et al.**

**No. 4653.**

Supreme Court of New Mexico.

Nov. 17, 1942.

Charles F. Fishback, of Fort Sumner, for appellants.

Edward P. Chase, Atty. Gen., for appellee.

BRICE, Chief Justice.

The appellants were convicted of manslaughter and have appealed from a judgment sentencing them to the state penitentiary.

The verdict is supported by substantial evidence: On December 24, 1940, a crowd of some fifteen people had gathered in a saloon in "Old Town" Fort Sumner. At twelve o'clock Mrs. George Gallegos, the proprietress, requested them to leave so that she could close the saloon

for the night. Among those present were the defendants and the deceased, Merejildo Garcia, known as "Blackie". All had been drinking.

The witness, Alfredo Lucero, testified in substance that he knew the defendants and the deceased and that on the night in question he stood outside the saloon and looked through a window, and saw the defendants, deceased, and others in the saloon. As they came out he heard defendant Ezequiel Lopez call some one a "son of a bitch" and saw him at the time strike deceased, who asked, "What is the matter?" Defendant Lopez then struck him again, knocking him to his knees. The other two defendants then "jumped on" deceased and kicked him and beat him with "their fists and hands". He fell face down and said "that is enough". The witness then continued, "We all went away and left 'Blackie' down at the front of the saloon. I went to his body right after he fell. He never got up. He was left there and I went home and went to bed. There was a light in front of the saloon. At the time of the fight the deceased, the defendants and others were present, and Alfonso Chavez tried to stop the fight. When the crowd came out they stood in front of the saloon and it was then the fight began. I was there until it ended."

The witness Benny Gallegos testified that he was present at the saloon on the occasion mentioned, with Floyd Caldwell, and saw the defendants and the deceased there. The witness and Caldwell left when the saloon was closed and when about forty yards away, stopped to take a drink. He testified: "I looked back and saw the crowd but did not know what they were doing. I saw some one lying on the ground. I did not see any of the defendants strike the deceased, nor did I see any of the defendants when I looked back. I do not know who were there."

Floyd Caldwell testified that he went with Benny Gallegos to Mrs. Gallegos' saloon in "Old Town" on the night in question. He was not acquainted with the defendants but knew the deceased, who was in the saloon. He and Benny Gallegos followed the others out of the saloon. He stated further: "I don't think there was a light in front of the saloon. It was not very light. We stopped and turned around and I saw a fight going on. I just stood there a few minutes. I was about thirty yards from the fight, and it was not easy for me to see the parties who were fighting. At the time there was a big crowd of people in front of the saloon. It was not paved in front of the saloon and there were rocks there.

The defendant Anaya did not testify and the defendants Lopez each testified that they had no trouble that night with the deceased. None of those present at the saloon (except the three witnesses named), including the two defendants who testified, seemed to remember anything concerning the difficulty (often the case in murder trials in New Mexico).

The sheriff found the body of the deceased lying on its face between the high-

way and the front of the saloon. The medical testimony showed the deceased's body was found in the following condition: There were several bruised spots on the left side of the head; a bruise back of the left ear; blood and spinal fluid in the ear canal. The bruised spots were probably caused by some heavy object with force behind it. His death was caused by a blow behind the left ear. There were bruises on his right arm; his left arm had been broken long before and the bones had failed to knit, so that he probably had no more than ten percent of its normal use. The wounds other than the one behind the left ear might have contributed to his death. Any blow on the head is apt to cause some hemorrhage on the inside. "The blow inflicted on this man's head could not have been made with a bare fist." The wound behind the left ear could have been caused by a hard kick, or repeated kicks, if made by heavy boots or shoes. There was a basal skull fracture of the inner ear and spinal fluid was coming from the ear.

Melecio Aragon testified that he saw deceased after he was dead, and he dressed the body; that his ribs and arms were blue.

From this testimony the jury could reasonably find: That the defendants were beating and kicking the deceased; that he fell to the ground on his face and died from the effects of such assault; that he had many bruises on his body and a fracture of the skull behind the left ear; that these bruises were made by some instrument used with force capable of inflicting death; that kicks with heavy shoes or boots could have caused them; that other wounds than the one behind his ear, which alone would have been fatal, contributed to his death; that defendants killed deceased in a sudden quarrel.

■ This evidence substantially supports the verdict of the jury, and the trial court did not err in overruling appellants' motion for an instructed verdict.

■ It should be stated here that appellants have entirely ignored section 14 (5) of Supreme Court Rule XV which required them to present points or legal propositions as a basis for their arguments. We have only arguments in divisions, and nothing more. This does not comply with the rule. Robinson v. Mittry Bros., 43 N.M. 357, 94 P.2d 99.

It is asserted that certain of the testimony of the witness Melecio Aragon was inadmissible and should have been stricken on appellants' motion. Regarding this testimony appellants say in their argument:

"Defendants moved to strike this testimony on the ground that it was irrelevant and immaterial, because there was no evidence to show what they were arguing about; to which counsel for the State made the following rejoinder;

" 'The state expects to connect that up, and we feel it is very material in showing intent and deliberation as to what took place later, which will be shown by the State.'

"Upon hearing this statement the court overruled our motion, and the defense saved an exception. Thereafter nothing further was said on the subject. The State not only did not attempt to connect up the objectionable testimony, but did not refer to it, in any manner whatsoever."

█ If the testimony was inadmissible, a question we are not called upon to decide, it was the duty of the appellants to call the matter to the attention of the trial court after the State had failed to connect such testimony with other testimony that would show its admissibility. State v. Massey, 32 N.M. 500, 258 P. 1009.

It is stated that three certain instructions given to the jury by the court were erroneous. After a careful search of the record we do not find that the trial court's attention was called to the errors, if any.

Section (g) of Rule 51 of the Rules of Civil Procedure (formerly Sec. 7108) is as follows: "(g) Error in Instructions— Preservation. For the preservation of any error in the charge, objection must be made or exception taken to any instruction given; or, in case of a failure to instruct on any point of law, a correct instruction must be tendered, before retirement of the jury. Reasonable opportunity shall be afforded counsel so to object, except or tender instructions."

█ The appellants, therefore, cannot raise the question in this court.

The whole argument under paragraph 5 is as follows:

"The trial court erred in permitting the State to impeach its own witness, Benny Gallegos. He not having given any testimony hostile or injurious to the case attempted to be made by the prosecution, but merely having denied, on the witness-stand, that he had seen a fight, or that he had said that he had seen a fight.

"The point made by the defense is decided in our own State, in a case in which this is the only question before the Court. The defense cites that case and respectfully adopts the reasoning therein, as its argument in this case. State v. Hite, 24 N.M. 26."

█ No point is made, and no reference is made to the pages of the record where this testimony can be found. We held in the case of State v. Hite, 24 N.M. 23, 26, 172 P. 419, (cited by appellants) in construing § 45-607, N.M.Sts.1929, that a party could not impeach the credit of his own witness by proving inconsistent statements unless the witness had proven adverse. That statute is as follows:

"The credit of a witness may be impeached by general evidence of bad moral character not restricted to his reputation for truth and veracity; but a party producing a witness shall not be allowed to impeach his credit by general evidence of bad moral character, but in case the witness, in the opinion of the judge, proves adverse, such party may prove that the witness made at other times a statement inconsistent with his present testimony; but before such last mentioned proof can be

given the circumstances of the supposed statement, sufficient to designate the particular occasion, must be mentioned to the witness, and he must be asked whether or not he did make such statement."

The witness Benny Gallegos prior to the trial, had stated in the presence of the district attorney, sheriff and others, that after he left the saloon and was a short distance away, he looked back and saw a fight between the appellants and the deceased and saw the deceased down on the ground. When placed upon the witness stand by State's counsel, he not only denied that he saw any fight or the deceased, but stated that he saw some people in front of the saloon; and he saw the defendants Lucero "crossing the highway."

This testimony was intended to prove that the Luceros were not fighting deceased in front of the saloon. It is evident that Gallegos was an adverse witness, and the court did not err in permitting him to be impeached.

The court permitted the State's witness Alfredo Lucero to testify that while he and one Luis Valdez were standing close to the deceased, who was then lying on the ground, Valdez said, "I don't know whether he is dead or alive." This was admitted upon the theory that it was res gestae. Whether it was res gestae or not we cannot see that it prejudiced the appellants in the slightest. He was either dead or died soon thereafter.

Another question is raised by the eighth division of appellants' argument, which was not raised in the district court and therefore cannot be considered here. However, it is without merit, and need not be discussed. Voluntary manslaughter is included in a charge of murder. State v. Puckett, 39 N.M. 511, 50 P. 2d 964; State v. Burrus, 38 N.M. 462, 35 P.2d 285.

The judgment of the district court is affirmed, and it is so ordered.

SADLER, MABRY, and BICKLEY, JJ., concur.

ZINN, J., did not participate.