256 P.2d 532

**STATE v. GARCIA.**

No. 5557.

Supreme Court of New Mexico.

April 22, 1953.

taining money from Bernalillo County by false pretenses. The amounts so obtained ranged from $43 to $155.15. The defendant had a position under the County Manager and carried the title of "field man," and his duties varied from calling people to make repairs at the courthouse to securing sites for the holding of special elections. He was, it seems, a general handy man working out of the manager's office.

The first point made by the appellant is the trial judge erred in denying his request that the testimony of the custodian of the Bernalillo County courthouse, James Garcia, an early witness for the state, might be interrupted in order that Garcia could go with the witness Chico Miranda (the plumber and payee in the warrants involved in this case), and a representative of the District Attorney's office to inspect the plumbing in the courthouse, taking with them the six vouchers and statements for the purpose of checking whether the work set out in the statements had been done. The objection of the state to such action was sustained, the defendant did not except, and the witness was then excused.

The witness had testified that he was rather confused, but if he and the plumber, Chico Miranda, went through the building together, he, the witness, could determine what work had been done.

No reason is given by the defendant why such inspection had not theretofore been

---

Timothy P. Woolston, Albuquerque, for appellant.

Richard H. Robinson, Atty. Gen., Fred M. Standley, and C. C. McCulloh, Ass't Attys. Gen., for appellee.

McGHEE, Justice.

The appellant was convicted on six counts of an information charging him with ob-

made, nor did he later make application to the court to withdraw the exhibits so the custodian and the defendant could make such inspection, although the trial continued for some two days after the request was made. Had such later inspection been made the custodian could have been recalled for further cross-examination by the defendant. We feel this claim of error is without merit.

■ The appellant urges under point two that the trial court erred in refusing to set aside the verdict and grant him a new trial. The argument under this point resolves itself into a contention that there is not sufficient evidence to support a conviction for obtaining money by false pretenses.

As stated above, the defendant was convicted on six counts. Chico Miranda, the operator of a plumbing establishment in Albuquerque, was a close friend of the defendant. Miranda was often called to make various kinds of repairs to the plumbing in the county courthouse, clean out clogged toilets, pipes and do other similar work. The defendant says he often made out bills against the county for Miranda for such work, and it is out of payments for such claimed work this case arose. The defendant admits he made out the bills involved in this case, as well as the vouchers, and signed Miranda's name to them. Part of them were notarized in Miranda's name before different notaries, and the defendant notarized a few himself. As to the latter, he not only signed Miranda's name to the vouchers, but then signed as a notary. There is ample evidence in the record that the defendant presented these bills and vouchers to the County Commissioners, secured warrants therefor which he cashed, and that he kept the money, some of it being traced directly into his bank account in the exact amount of the vouchers and warrants. There is also ample testimony that Miranda did not get any of the money or do any of the work claimed to have been done in the bills submitted in support of the vouchers on which the prosecution is based. Nor did the ledger sheets in Miranda's office show he had done such work or furnished the materials described in the accounts.

The accounts were made out against Bernalillo County, submitted to its Board of County Commissioners by the defendant who, according to his testimony, had as one of his duties the calling of a plumber to do needed work on the plumbing system of the courthouse. He knew, according to the testimony, the work had not been done, and he secured the warrants and the proceeds thereof. The jury was fully instructed on the necessity of finding the defendant submitted the bogus bills with intent to defraud the county, and the proof meets the test required by State v. Kelly, 1921, 27 N.M. 412, 202 P. 524, 21 A.L.R. 156, the Board of

County Commissioners being charged by law with the duty of examining and settling all accounts and expenses against the county which may be chargeable to it, and causing warrants to be issued therefor, as provided by sec. 15–3513, 1941 Compilation.

██ Under his third and last point the defendant urges the trial court erred in allowing the District Attorney to impeach the witness Chico (Isidore) Miranda on redirect examination, by questioning him about affidavits containing statements directly contradictory to his testimony on cross-examination, and then admitting such affidavits in evidence over objection.

Miranda was a key witness for the state. It is admitted he was often called to do plumbing work in the courthouse. He had testified on direct examination that he did very little of the work shown on the bills involved, or that he had furnished the material therein described, and that the little he did do was paid for by the county on other bills; that he had not authorized the defendant to make out the bills and vouchers in his name, or to cash the warrants and keep the money. On cross-examination he testified he had furnished all of the materials and had done all of the work shown on the bills, had authorized the defendant to make out the bills and sign his name to the vouchers, and had also authorized the defendant to cash the warrants and keep the proceeds, applying it on an indebtedness owing by him to the defendant Garcia.

The defendant cites State v. Lopez, 1942, 46 N.M. 463, 131 P.2d 273 and State v. Hite, 1918, 24 N.M. 23, 172 P. 419, 420, in support of his claim of error under this point, saying the witness had not actually proved he was adverse to the state.

On direct examination the witness testified freely, and apparently voluntarily, and in line with affidavits previously given the authorities while the charges against the defendant were under investigation; and, as above stated, his testimony made out a strong case for the state. He did a right-about-face on cross-examination and, if his testimony then given was to be believed, fully exonerated the defendant. When taken on redirect he did not again embrace the cause of the state but did admit making the affidavits which were directly contrary to the testimony given on cross-examination, thus showing his hostility to the state and bringing the action of the court in permitting his impeachment within the rule stated in State v. Lopez and State v. Hite, supra. True, the Hite case was reversed for permitting the impeachment of its "to have been" star witness, Don Sullivan, by showing his testimony before the grand jury, but he had purportedly suffered a complete lapse of memory within the few days between his testimony before the grand jury and the trial in the district court. He had not testified to anything adverse to the state, merely repeating for hours in answer to questions by the district attorney: "I

don't remember." The action of the trial court in permitting the impeachment was also in accord with sec. 20–204, 1941 Compilation, which reads:

"The credit of a witness may be impeached by general evidence of bad moral character not restricted to his reputation for truth and veracity; but a party producing a witness shall not be allowed to impeach his credit by general evidence of bad moral character, but in case the witness, in the opinion of the judge, proves adverse, such party may prove that the witness made at other times a statement inconsistent with his present testimony; but before such last mentioned proof can be given the circumstances of the supposed statement, sufficient to designate the particular occasion, must be mentioned to the witness, and he must be asked whether or not he did make such statement."

It was for the jury to say what part of the testimony, if any, of Miranda was true. Di Carlo v. United States, 2 Cir., 1925, 6 F.2d 364.

We are convinced the defendant had a fair trial, that the case is free of error and the evidence amply supports the verdict. The judgment is affirmed.

It is so ordered.

SADLER, C. J., and COMPTON, COORS, and LUJAN, JJ., concur.